## Veit, Appellant, *v.* Class and Nachod Brewing Company.

*Negligence—Explosion in brewery—Evidence—Contributory negligence—Previous act.*

In an action against a brewing company to recover damages for death of plaintiff's husband resulting from an explosion caused by some unknown person tampering with the steam appliances of the brewery, it is reversible error for the court to admit evidence to the effect that the deceased himself had on a previous occasion tampered with the steam appliances for the purpose of hastening his work in filling beer barrels, where there is no evidence in the case whatever to connect the deceased with the act which was the immediate cause of the explosion.

It is an established rule applicable alike to civil and criminal inquiries that the commission of the act charged cannot be proved by showing a like act to have been committed by the same person.

Argued May 1, 1906. Appeal, No. 82, Jan. T., 1906, by plaintiff, from judgment of C. P. No. 1, Phila. Co., June T., 1903, No. 2,615, on verdict for defendant in case of Katherine Veit *v.* The Class and Nachod Brewing Co. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for death·of plaintiff's husband. Before Brégy, J.

At the trial Albert Schlayer, chief engineer of the defendant, testified that immediately after the explosion which killed the deceased, he found that the regulator on the steam pump had been plugged with a large nail, that the safety valve had been tied down with a rope, and that extra weight had been placed on the lever. He also testified that the deceased was head cellar man employed in pumping beer. Under objection and exception the witness was permitted to testify as follows:

" Q. Had you ever given him any instructions as to the use of that pump in his branch of the business? A. I warned him what could happen to him if he did certain things. Q. Tell me what you said to him and what took place? A. I warned him that if he ever put that plug in it would kill somebody."

Objected to. Objection overruled.

" Q. Go on? A. I answered it. I warned him, having caught him putting this plug in on previous times twice. Q. When was the last time? A. Some time previous to the accident. Q. A few days? A. No; longer than that; it must have been a month or two. Q. What did he say? A. Well, he said he was in a hurry and wanted to get done. I told him that if it occurred a second time I would have· him discharged. Just then Mr. Class happened to come along and heard the conversation. I told it to him, and Mr. Class—. Q. What Mr. Class? A. Mr. Julius Class, and he also told him if he did anything of that kind again he would discharge him."

Objected to. Objection overruled. Exception to plaintiff.

" Q. On that occasion how did he manipulate the regulator? A. The same way as I found it the day of the accident. By inserting this plug and putting the regulator out of action. Q. Did you take it out or did he by your orders? A. I took it out. Q. Then you addressed this remonstrance to him? A. I did. This is the second time. Q. On the former occasion you also found he had plugged it? A. I did. I saw him do it; I saw him put it in. Q. And you had remonstrated with him at that time? A. I did certainly; very strongly, too. Q. The last time you said that if it happened again he would be discharged? A. I did."

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was ruling on evidence as above, quoting the bill of exceptions.

*John M. Vanderslice,* with him *Clarence Vanderslice,* for appellant.—In an action to recover damages for personal injuries, when the defendant sets up as a defense the contributory negligence of the plaintiff, evidence that on a previous occasion plaintiff was guilty of an act similar to the alleged act of contributory negligence, is inadmissible : Baker v. Irish, 172 Pa. 528.

*W. W. Smithers,* of *Smithers & Lank,* for appellee.—The evidence was properly admitted: Woeckner v. Motor Co., 182 Pa. 182 ; Trego v. Lewis, 58 Pa. 463 ; Penna. R. R. Co. v. Eby, 107 Pa. 166 ; Stafford v. Henry, 51 Pa. 514; Pratt v. Jewelry Co., 69 Pa. 53.

OPINION BY MR. JUSTICE STEWART, June 27, 1906 :

The immediate cause of the explosion which resulted in the death of the plaintiff's husband is not obscure. The steam gauge, just before the explosion occurred, registered a pressure in excess of twenty-five pounds, whereas the maximum of safety was from sixteen to eighteen pounds. This could not have occurred had the governor and safety valve been in working order. An examination made within a few minutes after the explosion, showed that the regulator on the steam pump had been plugged with a large wrought-iron nail, that extra weights had been placed on the lever, and that the safety valve on the tank in the cold-storage room was tied down with a rope. That this was the work of a designing mind is beyond question. The evidence admits of conjecture, but nothing more, as to the purpose back of it. While it does not necessarily result from the fact that the appliances to the steam machinery were found in this condition fifteen or twenty minutes after the explosion, and after a number of persons had been admitted to the room, that they were in the same condition when the explosion occurred, yet the evidence on this point was strongly persuasive of the fact, and its admission was not open to objection. Assuming this to be the true explanation of the explosion, where did the responsibility rest? The conten-

tion on the part of the plaintiff was that, while it was chargeable in the first instance to the negligence of the defendant's night engineer, whose duty it was to observe the state of the gauge and keep the pressure within the limits of safety, the responsibility rests on the defendant because—and the evidence on this point was amply sufficient to establish a prima facie case—the night engineer in charge was a man given to habits of intoxication, a circumstance that was known or should have been known to the defendant, and that he was in point of fact under the influence of liquor during the night of the accident, to an extent that made him incompetent for the work assigned him. The effort on the part of the defense was not only to meet and overcome the testimony of the plaintiff with respect to these matters, but to refer the interference with the appliances to the steam machinery, directly to the plaintiff's husband who was killed. It is in connection with the latter effort that we have this appeal.

Of course, if it was plaintiff's husband who, on his own responsibility and for his own purposes, disarranged the machinery in a way that resulted in the explosion, no liability could attach to the defendant, however much the incompetency or negligence of the night engineer may have contributed. As a distinct fact in the case the jury were allowed to pass upon the question whether Veit did or did not tamper with the machinery in the way indicated. The finding was for the defendant generally, but inasmuch as several questions of fact were submitted, either one of which being found for the defendant would have determined the verdict as rendered, we cannot know what the jury's finding was with respect to this particular inquiry. It may have been for all we know, the determining one, and it therefore becomes important to inquire as to the basis for the submission.

Veit was engaged in filling kegs with beer from the vats for the morning delivery. The time required for this work depended to some extent upon the air pressure in the vats; the greater the air pressure the more rapidly could the kegs be filled. A witness for the defendant testified that Veit had been discovered on several occasions, the most recent being about a month before the accident, interfering with the safety valve on the air pump; and that he had given as his reason

for so doing that it enabled him to get through with his work and return to his home at an earlier hour than he otherwise could; that he had been threatened with discharge if he repeated the interference, and had been cautioned that such interference might result in loss of life. This evidence was admitted under objection, and its admission is assigned for error.

Had there been any evidential fact connecting Veit with the explosion, this testimony would have been competent as showing the motive, as a supporting circumstance; but there was absolutely none. He was not shown to have said or done anything that connected him in any way with the condition of the machinery that occasioned the explosion, nor was there a single circumstance pointing in this direction. The jury were allowed to infer that his was the hand that plugged the governor and tied down the valve, solely because of his previous conduct as testified to. Clearly this evidence was insufficient to warrant an inference that the interference was Veit's; and when offered as a distinct piece of evidence, unaccompanied by any offer to show any other implicating circumstance, it ought to have been rejected. It is an established rule, applicable alike to civil and criminal inquiries, that the commission of the act charged cannot be proved by showing a like act to have been committed by the same person. The rule is thus stated in Stephen's Digest of the Law of Evidence, Article 10: "The fact which rendered the existence or nonexistence of any fact in issue probable by reason of its general resemblance thereto, and not by reason of its being connected therewith, is deemed not to be relevant to such fact." A fuller statement of the rule is to be found in 1 Wigmore on Evidence, page 230: "Where the doing of the act is the proposition to be proved, there can never be a direct inference from an act or former conduct to the act charged; there must always be a double step or inference of some sort, a tertium quid. In other words, it cannot be argued 'Because A did an act X last year, therefore he probably did the act X as now charged. Humanity being infinitely varied, there is no adequate probative connection between the two. A may do the act once, but may never do it again; and not only he may not do it again, but it is in no degree probable that he will do it again. The conceivable con-

tingencies that may intervene are too numerous.' . . . This principle has long been accepted in our law. 'That a doing of one act is in itself no evidence that the same or a like act was again done by the same person,' has been so often judicially repeated that it is commonplace." In 17 Cyc. of Law and Procedure, page 279, the same rule is stated in different terms. "Among inferences which, except under certain conditions, the law will not permit to be drawn, is that the person has done a certain act because he has done a similar act at another time. And the rule has repeatedly been asserted by the courts, and has been applied equally to civil and criminal cases." The application of this rule in our own cases has been frequent. It is necessary to refer to but a single one. In Baker v. Irish, 172 Pa. 528, the effort was to show that the plaintiff in the action, who had been injured in an elevator, and was suing for damages, had made a practice of jumping from the elevator while in motion. Rejection of the evidence was assigned for error. We quote from the opinion of Mr. Justice DEAN: "There was no error in the ruling; what Baker had done before would warrant no inference, or one so remote, that he had done the same on the day of the accident, that the evidence was inadmissible. Says Wharton's Law of Evidence, sec. 40 and notes: 'Ordinarily, when a party is sued for damages, flowing from negligence imputed to him, it is irrelevant to prove against him other disconnected though similar negligent acts. . . . . So, where the question in a suit against a railway company is whether a driver on a particular occasion was negligent, it is irrelevant to prove that he had been negligent on other occasions.' The same rule applies where the defense is that the injury was caused by plaintiff's own negligence. Men do not usually risk life and limb without motive, and the fact that a man has done so once or oftener, does not warrant the induction 'that he did so on the particular occasion in controversy.'"

It was error to admit the evidence. The second assignment of error is sustained: the judgment is reversed and a venire facias de novo awarded.