# Karnofsky Bros. *v.* Del. & Hudson Co., Appellant.

*Carriers—Common carriers—Live stock—Negligence—Terminal carrier—Evidence—Act of Congress of June 29, 1906, 34 Stat. L. 607—Witness—Expert testimony.*

1. Where a live stock contract provides that no carrier shall be "liable for loss, damage or injury not occurring on its own road," except as such liability may be imposed by law, it is reversible error for the court, in an action against the terminal carrier for injury to live stock delivered in a damaged condition, to charge that it was "sufficient to hold defendant, the ultimate carrier, for negligence, if plaintiff proves negligence anywhere along the line."

2. In such case, where there is evidence tending to show that horses had not been fed by the ultimate carrier within the time required by the Act of Congress of June 29, 1906, 34 Stat. L. 607, and defendant had not acted with due care under the circumstances, the case is for the jury, under proper instructions from the trial judge.

3. Witnesses with experience in shipping horses, who know their habits and dispositions, and the causes likely to lead to their injury on board cars, may express their professional opinion that the horses had not been fed within the time required by the act of Congress.

*Practice, C. P.—Averments in pleadings—Evidence—Procedure at trial—Act of May 14, 1915, P. L. 483.*

4. Where averments in the pleadings are depended upon as proofs in the case, they should be brought before the court, in the manner provided by the Act of May 14, 1915, P. L. 483, and indicated in Buehler v. U. S. Fashion Plate Co., 269 Pa. 428.

Argued April 10, 1922. Appeal, No. 184, Jan. T., 1922, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1918, No. 276, on verdict for plaintiff, in case of Karnofsky Brothers v. Delaware & Hudson Co. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART and SCHAFFER, JJ. Reversed.

Assumpsit for injuries to horses shipped under live-stock contract. Before WOODWARD, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $2,490.81. Defendant appealed.

*Errors assigned,* inter alia, were (1) refusal of defendant's motion for judgment n. o. v., and (9) portion of charge quoted in opinion of the Supreme Court, quoting it.

*Edward R. Noble,* with him *W. C. Noyes* and *James H. Torrey,* for appellant.—The evidence as to negligence was effectively rebutted: Keller v. P. R. R., 45 Pa. Superior Ct. 383; Penna. R. R. v. Raiordon, 119 Pa. 577; Hall v. R. R., 60 Pa. Superior Ct. 235; Wilson v. Express Co., 72 Pa. Superior Ct. 384; Davenport v. Ry., 10 Pa. Superior Ct. 47.

This is a suit in assumpsit on a contract of carriage involving an interstate shipment, and the questions arising under that contract of carriage or bill of lading are federal questions and must be determined according to the requirements of federal legislation and decisions of the Supreme Court of the United States: Concordia Silk Hosiery Co. v. R. R., 69 Pa. Superior Ct. 361; Atlantic Coast Line R. R. Co. v. Riverside Mills, 219 U. S. 185; Ga., Fla. & Ala. R. R. Co. v. Milling Co., 241 U. S. 190.

The terminal carrier was not liable: Atlantic Coast Line v. Riverside Mills, 219 U. S. 186; Kansas Southern Ry. v. Carl, 227 U. S. 639; Missouri, K. & T. Ry. v. Harriman, 227 U. S. 657; Boston & Maine R. R. v. Hooker, 233 U. S. 97.

Contract of the initial carrier inures to the benefit of succeeding carriers in an interstate shipment: Kans. City Southern R. R. v. Carl, 227 U. S. 639, 57 L. ed. 683-687.

A connecting carrier is not relieved from liability by the Carmack amendment, but the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation, and thus

fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid: Ga., F. & A. Ry. v. Milling Co., 241 U. S. 190, 60 L. ed. 948, 951; Cincinnati, N. O. & T. R. R. v. Rankin, 241 U. S. 318; Adams Express Co. v. Croninger, 226 U. S. 491.

*Frank A. McGuigan,* for appellees.—The appellant, the terminal or delivering carrier, is liable even though the negligence complained of was solely that of a preceding carrier.

Appellant was negligent, and its negligence contributed to the loss.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 8, 1922:

On March 21, 1917, at Eureka, Illinois, J. T. Gould consigned to Karnofsky Brothers, plaintiffs, twenty horses, to be delivered to them at Wilkes-Barre, Pa.; the shipment was on a live stock contract, in the usual form, which expressly provides that no carrier shall be "liable for loss, damage or injury not occurring on its own road or its portion of any through route, nor after said live stock has been delivered to a connecting carrier, except as such liability may be imposed by law......, nor for any loss, damage or delay not caused by the negligence of the carrier, and such negligence shall not be presumed but must be established." The horses arrived in a bad physical condition, and several of them died after a few hours.

The present suit for damages was brought against the terminal carrier. The court below tried the case on the theory, and expressly so instructed the jury, that it was "sufficient to hold defendant, the ultimate carrier, for negligence, if plaintiff proves negligence anywhere along the line." Judgment was entered on a verdict for plaintiff and defendant has appealed.

The above-quoted instruction,—which was repeated several times, in one form or another,—is clearly wrong. It is not necessary to discuss the point at any length, however, because the Supreme Court of the United States recently handed down an opinion in a case like the present against the ultimate carrier (Oregon-Washington Railroad & Navigation Company v. McGinn, U. S. Sup. Ct. Advance Opinions 1921-22, pp. 369, 370) where it held a similar instruction reversible error, the court saying, inter alia: "The settled federal rule is that, in the absence of statute or special contract, each connecting carrier on a through route is bound only to safely carry over its own line and safely deliver to the next connecting carrier......and the liability of a connecting carrier, for the safety of property delivered to it for transportation, commences when it is received, and is discharged by its delivery to and acceptance by a succeeding carrier, or its authorized agent......The Cummins Amendment deals with and modifies the common law liability only of the initial carrier. It renders that carrier liable for loss or damage to the property committed to its care throughout the entire route by which it is billed until delivered to the consignee, but it leaves the relation of all connecting carriers, including the terminal carrier, to the shipper or consignee and to each other, entirely unaffected,......and therefore their liability is as we have stated it, unless modified by contract, and in this case, as we have seen, the live stock contract, under which the shipment moved, by expressly providing that 'no carrier (other than the initial carrier) shall be liable for damage for loss, death, injury or delay to said animals, or any thereof, not caused by it,' leaves the common-law liability of the intermediate carrier entirely unaffected, just as the statute leaves it." This language is entirely appropriate to the case at bar.

The erroneous instructions to which we have called attention require the granting of a new trial, but appellant asks greater relief; it claims no evidence was pre-

sented to prove negligence on its part and therefore it is entitled to judgment n. o. v.   The contention is that, considering the form in which the suit was brought (the statement of claim averring, "it was also the duty [of the carriers] to feed, water and rest said animals after every thirty-six hours of confinement") and under the relevant act of Congress (Act of June 29, 1906, 34 Stat. L. 607), defendant was not obliged to feed or water the horses while in its charge, because only 34 hours elapsed between the time of their delivery to it and their being handed over to plaintiff.   The act in question provides that animals may not be confined longer than 28 hours without food, etc., unless, upon the request in writing of the owner or person in custody of that particular shipment, the time "be extended to 36 hours"; and, in addition to the above-quoted excerpt from the statement of claim, defendant produced some evidence indicating that such a request had been made.   At the next trial, however, if any averments in the pleadings are depended upon as proofs in the case, they should be brought before the jury in one of the manners recently indicated by us in Buehler v. U. S. Fashion Plate Co., 269 Pa. 428.

Evidence was introduced tending to show the following facts:  The horses were in good condition when shipped; they were delivered to defendant on March 26, 1917, at 8:15 p. m., and remained in its charge until about eight o'clock the following morning; when delivered to plaintiffs, the horses appeared to be in a starving condition; their manes and rope halters were chewed, the inside woodwork of the car, posts and uprights were gnawed, and boards were eaten off its sides; there was no food, or evidence of food, or manure in the car, and a postmortem examination of the dead horses showed nothing in their stomachs; a veterinarian, called as an expert, by plaintiff, expressed the opinion that lack of food was a contributory cause to the bad condition of the animals upon their arrival,—that, in his opinion, had they been

properly fed, they would have lived, and, from all indications, he would say the horses had not been fed for from 48 to 50 hours before their arrival at Wilkes-Barre. The waybill which accompanied the shipment contained an entry as follows: "Fed, watered and rested at Victoria, reloaded 9 p. m., 3/25-17"; defendant's representative read this entry on the waybill and looked to see that the horses were all standing in the car; there was no further inspection or examination made. It appeared, however, that, notwithstanding the entry on the waybill, indicating a feeding within 36 hours, no bill was presented to plaintiff for such feeding until long after the present suit was instituted, although he was charged for other feedings en route.

Some of the above facts are taken from the evidence presented by plaintiff and others from that of defendant; in addition, the latter produced other testimony indicating a feeding within 36 hours.

On the whole, we feel that the issues, as to whether or not, as a matter of fact, the horses had been fed within the required time, and whether defendant acted with due care in the premises, were for the jury, under proper instructions from the trial judge, who might well have charged that, if the jury believed a reasonable exercise of care on the part of defendant railroad would have shown the horses in such a starving condition that its inspector must have known they were in dire need of food and water, then the absence of due attention to their needs would constitute negligence.

Defendant further contends that the evidence of the experts called by plaintiff, who testified that, in their professional opinion, the horses had not been fed within the required time, was clearly inadmissible; but with this we cannot agree. In Schaeffer v. P. & R. R. R., 168 Pa. 209, 213, this court said: "Witnesses who had been for years engaged in shipping mules, who knew their habits and dispositions and the causes likely to lead to their injury on board cars, and who saw these mules

when they were unloaded, were allowed to express their opinions as to the cause of the injuries. The value of their opinions was for the jury to determine, and we see no valid objection to admitting the testimony."

The points discussed in the first part of this opinion, concerning the erroneous instruction on the law, as to the liability of defendant for negligence of all prior carriers, are covered by several assignments of error; these are sustained. Since the case must go back for a new trial, which, under the law as here laid down, will necessarily be conducted along different lines from the last one, it would serve no good purpose to go further into the other assignments.

The judgment is reversed with a venire facias de novo.