Caulfield *v.* Aetna Life Insurance Company of Hartford, Appellant.

Argued October 15, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Paul Reilly,* for appellant.

*Michael A. Foley,* with him *Henry I. Koplin,* for appellee.

OPINION BY CUNNINGHAM, J., April 16, 1941:

Sarah Caulfield instituted this action in assumpsit on March 20, 1939, against the Aetna Life Insurance Company, seeking to recover the sum of $1000, as total and permanent disability benefits, upon a certificate issued to her by the defendant company under a policy of group insurance covering the subscribing employees of the Friends Hospital, in Philadelphia. Under the heading "Permanent Total Disability Benefit," the certificate reads: "Upon receipt at the Home Office of the Aetna Life Insurance Company of satisfactory evidence that the employee, while insured hereunder and before reaching age sixty, has become totally disabled and that such disability will presumably prevent the employee for life from engaging in any occupation or employment for wage or profit, the Insurance Company will pay in accordance with the method designated under the terms of the policy the amount of insurance in force upon the employee's life at the time the disability commenced." The following provisions entitled "Notice of Claim" also appear in the certificate: "Notice of claim for benefits by reason of death or permanent total disability of the employee while insured under the policy should be given immediately direct to the Aetna Life Insurance Company or through the employer. It is not necessary to present a claim through a lawyer or any other person. Written notice of the death or permanent total disability of an employee while insured under the policy shall be given the Aetna Life Insurance Company at its Home Office within one year after cessation of the payment of premiums in respect to such employee; and if such notice is not given, the Insurance Company shall not be liable for any payment

on account of such death or permanent total disability."

Copies of the certificate and the group policy were attached as exhibits to plaintiff's statement of claim. The material facts averred in the latter are that defendant, on or before June 1, 1930, issued a group policy to the Friends Hospital, covering certain of its employees, of which plaintiff was one, as evidenced by the certificate issued to her; that on April 6, 1938, while still in the hospital's employ and while the insurance was in full force and effect, she suffered an accident resulting in total and permanent disability; that at the time of such disability, she was "fifty-nine years of age and would not reach her sixtieth year until August 30, 1938"; and that "pursuant to the terms of said policy" she had filed "her written proofs of claim with the defendant" which failed and refused to pay the sum of $1000 due thereunder.

The affidavit of defense, filed April 14, 1939, admitted the issuance of the policy and certificate under which plaintiff was insured, but alleged she was in fact *more than sixty years of age* when injured and that her disability was only partial and temporary. It was also averred that plaintiff did not furnish to defendant, at its home office, *satisfactory evidence* with relation to her age and the extent of her disability.

The trial before GLASS, J., and a jury, resulted in a verdict for the plaintiff in the sum of $1118.83, being the amount payable under the certificate, plus interest. The jury was properly instructed that the vital issues for determination from the evidence were: Whether or not plaintiff was totally and permanently disabled; if so, whether she had reached the age of sixty years at the time she became permanently disabled; and if not, whether she had given to the defendant company satisfactory evidence of her disability.

Defendant's motions for judgment in its favor, n. o. v., or a new trial were denied and it has appealed from the judgment entered on the verdict.

As to the nature and extent of her disability, plaintiff testified that on April 6, 1938, she was struck by an automobile at "C" Street and the Boulevard in Philadelphia and sustained "a dislocated shoulder" and "a wound in the head that took five stitches." She further stated that her leg was "all smashed up" and she had "a bad heart from it." She was taken to the Jewish Hospital for a while and then to the home of some friends where she stayed three weeks. Having developed pneumonia and being "in very bad shape," she was moved to the Oak Lane Nursing Home where she remained seven weeks, being confined to bed until two days before she left. She then went to Minnick's Hotel, 1622 Ridge Avenue, where she resided at the time of the trial. Plaintiff further testified she had since been unable to return to her domestic work at the hospital where she had been employed for twenty-six years, or to do any work at all because she took "dizzy spells," had "a bad heart condition" and got weak if she walked any distance.

Her testimony was corroborated by Dr. Harold T. Antrim who testified that when he first examined plaintiff, about a month after the accident, "she was then in bed, and she had a lacerated wound of the left scalp about two or three inches long, ...... some residual evidence of a cerebral concussion, ...... a fracture of the left clavicle or collar-bone with no union at that time, ...... some severe contusions, and a lot of pain around the ribs of the left chest. She was bruised up practically everywhere, particularly on the right leg, where she had a large hemitoma or blood tumor ...... and probably was bed-ridden for some time afterwards." Dr. Antrim did not examine plaintiff again until about December 27, 1939, at which time he stated "she had pain and limited motion in the left shoulder; she had pain and cramps in the right leg; she was suffering from dizziness, weak heart, arteriosclerosis—that is, hardening of the arteries—and high blood pressure,

along with the general conditions that accompany her age ......" An excerpt from his testimony reads: "Q. Doctor, from your examinations, first back in April shortly after April 6, 1938, and the condition in which you found her on the 27th of December of 1939, are you able to express an opinion as to whether or not she was able to do any work? Can you express an opinion? A. You mean from both the accident and the heart and the arteriosclerosis? Q. Yes. A. I would say no. She is very short of breath, and the least exertion, when I examined her, she got short of breath, and her heart would jump twenty to twenty-five beats after walking around the room three or four times. She was in my opinion totally disabled as far as the accident is concerned, and taking the two together, I would say she is totally disabled as far as performing her duties are concerned." The foregoing uncontradicted testimony furnishes, in our opinion, a sound basis for a finding of total and permanent disability. See *Cooper v. Metropolitan Life Insurance Company*, 317 Pa. 405, 408, 177 A. 43, 44, and *Mirabella v. Metropolitan Life Insurance Company*, 143 Pa. Superior Ct. 500, 18 A. 2d 474.

Upon the issue of fact as to the age of plaintiff, she had the burden of showing she was under sixty when injured. She testified positively she was born on August 30, 1878, at Irvinestown, County Fermanagh, Ireland, but was unable to obtain a certificate "from the rectory where [she] was born." Her statement made her fifty-nine years seven months and six days old on April 6, 1938, the date her disability began. Various documents were offered and admitted upon both sides. For instance, plaintiff's naturalization certificate which was in harmony with her testimony; two employment records of Friends Hospital were produced, one of which stated her age as under and the other as above the age testified to by her; proof of her registration as a voter was made. The Inspector of Registrations testified it

had been made, in part, from plaintiff's naturalization certificate, but it contains an obvious error of one year in calculating her age. The evidence upon this branch of the case was conflicting, but we think that introduced by and on behalf of plaintiff was sufficient to entitle her to go to the jury upon that issue. No complaint is made of the manner in which it was submitted to that tribunal by the trial judge.

Defendant's main contention is that plaintiff failed to show performance of the condition precedent to recovery under her certificate—submission to its "Home Office" of "satisfactory evidence" that she had become totally and permanently disabled.

This court in *Hanrahan v. John Hancock Mutual Life Ins. Co.*, 143 Pa. Superior Ct. 557, 18 A. 2d 512, and *Mawn, Admr. v. Prudential Insurance Company of America*, 144 Pa. Superior Ct. 200, 19 A. 2d 300, and our Supreme Court in *Astrin v. Metropolitan Life Insurance Company*, 341 Pa. 120, 17 A. 2d 887, had occasion to consider what amounts to compliance with a requirement for presentation to an insurer of "due proof" or "satisfactory evidence" of the happening of the event which creates liability under its policy.

In the Hanrahan case we said: "Compliance with the provision does not require any particular form of proof which the company may arbitrarily demand, or that it be in writing, but only such a statement of facts as, if established in court, would, prima facie, require payment."

One of the chief purposes of the rule is to prevent fraud and deception being practiced on the insurer by a long delay in the presentation of a claim. The Supreme Court specifically pointed out in *Janney v. Scranton Life Insurance Company*, 315 Pa. 200, 173 A. 819, that what the insurer is entitled to have is *notice of the fact of permanent disability*, but not such proofs as would be required on the trial of the case.

Plaintiff offered in evidence paragraph 9 of her state-

ment of claim which averred that she "did file her written proofs of claim with defendant," and so much of the corresponding paragraph of the affidavit of defense as admitted the presentation of a claim but averred that its form was unsatisfactory. This offer was admitted "for the restricted purpose of showing that a claim was filed." Philip Chapman, an adjuster for the insurer in Philadelphia, when called by plaintiff, admitted that the company's file, for the production of which plaintiff had issued a subpoena duces tecum, contained a letter dated July 13, 1938, "enclosing copies of other letters saying that Mrs. Sarah Caulfield [was] unable to work." The fact that this notice was evidently sent by the hospital is immaterial, for although the policy required "written notice" of disability within "one year after cessation of payment of premiums" it also provided that the notice should be given direct to the company "or through the employer." Chapman further stated the file indicated the company first made an investigation of the matter on August 3, 1938.

Recalled to the stand, plaintiff testified an investigator for the company, whom she identified as Chapman, first called upon her "around July or August," 1938 and that another investigator subsequently came to see her. She further testified she told Chapman she had been hurt and "wasn't able to work ...... and everything that was straight and truthful, and he said, 'Mrs. Caulfield, if you could get a paper of your age you would have a straight story, you would have a straight case.'"

Chapman, upon being recalled by defendant, denied having called on plaintiff or having had anything to do with the case in July or August, 1938, and said the file indicated that the investigation report was made by another investigator named Burnett. The latter was not called as a witness. Robert J. Peyton, supervisor of the defendant's disability claim department, testified the *Home Office* had received no written claim

from the *insured* nor any *evidence* of age or disability, but he admitted that office had knowledge of the fact of plaintiff's injury and disability, as the correspondence had been forwarded from Philadelphia. He also testified he knew the Philadelphia office had received a letter from plaintiff's attorney with reference to the claim and that the adjuster to whom it was addressed responded to it by telephone. These conflicts in the evidence and the credibility of the witnesses were necessarily for the jury.

Although the policy provided for payment only upon receipt of "satisfactory evidence" of an employee's disability prior to age sixty "at the Home Office," the manner of its transmittal and the source are immaterial. Since both Chapman and Peyton admitted that no blanks for a formal proof of claim were furnished to plaintiff, the company cannot now be heard to complain that the evidence produced was insufficient or unsatisfactory. As stated in *Astrin v. Metropolitan Life Insurance Company,* supra, "If the defendant desired more formal or detailed proof, it was its duty so to inform the plaintiff ...... In such circumstances our cases require that the proof must be treated as sufficient." See, also, *Amrovcik v. Metropolitan Life Insurance Company,* 119 Pa. Superior Ct. 176, 184, 180 A. 727.

It seems clear under the testimony to which we have referred that the defendant company had prompt and ample written notice at its home office of the plaintiff's accidental injury and disability. Full opportunity was afforded it to investigate her claim. One of its investigators did interview her, saw the extent of her disability, and told her the only thing lacking to make out a complete case was a birth certificate, which she told him she could not get from Ireland. No inquiry was made at the trial by either side as to the reason such certificate could not be obtained by plaintiff. If such public records were kept, defendant could have in-

vestigated the accuracy of plaintiff's statement. Apparently, defendant bases its contention that the evidence it received was not "satisfactory," within the intendment of the insurance contract, solely upon the inability of plaintiff to produce a birth certificate from a foreign country. We think the jury was fully warranted in concluding this was an arbitrary and unreasonable demand and that the evidence furnished amounted to a compliance by plaintiff with all the requirements of the policy.

We find no merit in the remaining assignments, all of which relate to alleged errors in the conduct of the trial. By way of brief reference thereto, we think the case was properly reopened to permit plaintiff to introduce certain portions of the pleadings which were relevant; the question raised relative to the issuing of the subpoena duces tecum was immaterial, since the file, the production of which was sought thereby, was in counsel's custody in the court room during the trial and the contents thereof were relevant and competent evidence of the notice and proofs received by defendant; finally, evidence of the practice of defendant in making claim investigations was properly rejected,— what the company did in the case at bar was the only proper subject of inquiry. The assignments are severally overruled.

Judgment affirmed.