635 A.2d 173

GENERAL EQUIPMENT MANUFACTURERS, Appellee,

v.

WESTFIELD INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 15, 1993.

Filed Dec. 6, 1993.

528

530

532

James R. Cooney, Pittsburgh, for appellant.

Valerie A. Gatesman, Pittsburgh, for appellee.

Before KELLY, POPOVICH and BROSKY, JJ.

KELLY, Judge.

In this opinion, we are called upon to determine whether the trial court properly held that a subcontractor, who was unable to complete a subcontract due to the general contractor's dismissal from the project by the owner, was required to prove the amount of labor and materials supplied to the project, rather than the reasonable cost of completing the subcontract, when attempting to recover payment for unpaid invoices from the general contractor's surety pursuant to a labor and materials payment bond. We are also called upon to determine whether the trial court properly excluded, as irrelevant, evidence pertaining to the percentage of the subcontract completed before the general contractor's dismissal from the project and the amount of the money the subcontract

or was paid to complete the subcontract by a different general contractor. We hold that the trial court did not err regarding the subcontractor's burden of proof for recovery of unpaid invoices pursuant to a labor and materials payment bond, nor did it commit error in its evidentiary rulings. Thus, we affirm the judgment entered in favor of General Equipment Manufacturers Inc. (GEM) for $92,221.53.

The relevant facts and procedural history of this case are as follows. On May 23, 1985, Coco Brothers, Inc. (Coco Brothers) entered into a contract with the School Board of Pittsburgh (School Board) to renovate the Oliver High School. The appellant, Westfield Insurance Company (Westfield) furnished Coco Brothers with the statutorily required labor and material payment bond (payment bond). Coco Brothers employed numerous subcontractors to assist with the renovation of the school building, including GEM. Pursuant to the terms of its subcontract with Coco Brothers, GEM was to furnish and install all of the wood casework for the project in accordance with the plans and specifications contained in the construction contract between Coco Brothers and the School Board for the sum of $240,000.00. GEM performed the work under its subcontract with Coco Brothers in stages from August, 1986 to March, 1987. GEM's first two deliveries of casework to the project were acceptable to both Coco Brothers and the School Board; however, GEM's third delivery of casework was initially rejected by the School Board and subsequently remedied by GEM. Additionally, during this time period, Coco Brothers received instructions from the School Board to delete three classrooms from the renovations. Coco Brothers received a credit for these deletions.

In March of 1987, Coco Brothers was dismissed as general contractor by the School Board together with all of its subcontractors, including GEM. At the time of Coco Brothers' termination as general contractor by the School Board, GEM had already billed Coco Brothers $106,552.00 for work and materials provided to the project. Coco Brothers paid GEM $28,065.00, leaving an unpaid balance of $78,486.00.

After Coco Brothers' departure from the job site, the School Board requested a credit from Coco Brothers for the work that had not been completed. Coco Brothers in turn requested a credit from each of its subcontractors. GEM offered Coco Brothers a $123,000.00 credit which in turn was passed on to the School Board without objection.

Coco Brothers' dismissal from the job site caused it to institute a law suit against the School Board; however, the common pleas court refused to proceed with the action because Coco Brothers' construction contract with the School Board contained a compulsory arbitration clause. Coco Brothers then initiated proceedings pursuant to the construction contract's arbitration clause. At the arbitration, John Coco, Jr. testified that Coco Brothers owed GEM money. During this time period, Coco Brothers' attorney, Maurice Nernberg, sent GEM's counsel, Thomas H. Welsh, a letter stating that the arbitration proceeding between Coco Brothers and the School Board was going very well so far and that hopefully Coco Brothers would be able to pay GEM's invoices without any unnecessary expense to GEM. This letter also thanked GEM for its forbearance in bringing a claim on the bill while Coco Brothers was proceeding with its arbitration against the School Board. The arbitration panel subsequently awarded Coco Brothers $467,582.92 plus $28,054.98 for a total award of $495,637.89, an amount considerably less than the nearly $900,000.00 it had been seeking. In the interim, GEM had become a subcontractor to Coco Brothers' replacement on the Oliver High School renovation project, the McAnallen Corporation. Under its contract with the McAnallen Corporation, GEM was paid $172,000.00 for completing the wood casework for the Oliver High School renovation project.

After the completion of the arbitration proceedings between Coco Brothers and the School Board, GEM demanded from Coco Brothers payment of the $78,486.40 unpaid balance. Coco Brothers refused to pay the outstanding balance alleging it had not received proper credit from GEM for the deletions from the project and back charges imposed by the School Board for GEM's defective work. GEM then sought payment

from Westfield pursuant to the payment bond. When Westfield refused to pay, Gem filed a complaint against Westfield asserting it was entitled to payment of the $78,486.40 unpaid balance pursuant to the terms of the payment bond.

In its complaint, GEM asserted that it had completed thirty-three percent of the work under the subcontract. This assertion was specifically denied by Westfield. During discovery, Westfield submitted interrogatories and requested production of documents pertaining to the calculation of GEM's invoices to Coco Brothers. When GEM filed objections to Westfield's interrogatories and request for production of documents, Westfield presented a motion to compel discovery before the Honorable Bernard J. McGowan. Judge McGowan denied Westfield's motion to compel discovery. The case was then scheduled for jury trial before the Honorable Frederic G. Weir. Before trial, both parties presented several motions *in limine.* Westfield's first motion *in limine* sought to limit GEM's damages to thirty-three percent of the $240,000.00 contract price ($80,000.00) minus the $28,065.60 in payments that its principal, Coco Brothers, had already made to GEM. Westfield's second motion *in limine* sought to preclude GEM from referring to other lawsuits that had arisen from Coco Brothers' failure to pay other subcontractors from the project. Both of Westfield's motions *in limine* were denied by the trial court.

GEM also presented two motions *in limine.* In its motions *in limine,* GEM sought to exclude from evidence as irrelevant any reference to GEM's subsequent contract with the McAnallen Corporation for the completion of the Oliver High School renovation project and any reference to Coco Brothers' lawsuit against GEM alleging abuse of process and wrongful use of civil proceedings. Both of GEM's motions *in limine* were granted by the trial court.

At trial, GEM presented the testimony of its president, James T. Majure. Mr. Majure testified that three invoices for the work completed had been sent to Coco Brothers, on August 20, 1986 for $27,514.00, September 26, 1986 for $3,670.00 and January 16, 1987 for $73,368.00. Mr. Majure

also testified that Coco Brothers had made payments of $24,762.60 and $3,303.00 for the first two invoices while withholding ten percent which was to be paid to GEM upon the completion of the entire project. Mr. Majure further testified that Coco Brothers had failed to make any payment for the third invoice of $73,368.00. Finally, Mr. Majure testified Coco Brothers owed GEM a total of $78,486.40, stating this figure included the unpaid third invoice and the ten percent which had been retained from Coco Brothers' two previous payments to GEM. GEM also presented the testimony of H. Edward Vero and Robert Capo of the School Board. Both Mr. Vero and Mr. Capo testified that GEM's work on the project was not the subject of any back charge that was imposed upon Coco Brothers by the School Board. At the close of GEM's case, Westfield moved for a compulsory non-suit asserting GEM had failed to make a *prima facie* case because it had failed to prove the cost of completing the work. The motion for compulsory non-suit was denied by the trial court.

█ Westfield then presented its case in which it attempted to present evidence pertaining to the difference between the $123,000.00 credit for unfinished work that GEM had given to Coco Brothers and the $172,000.00 it was paid by the McAnallen Corporation to complete the wooden casework for the project. The trial court refused to admit this evidence ruling that it was the subject of GEM's motion *in limine* which excluded all evidence pertaining to the subsequent contract between GEM and the McAnallen Corporation as irrelevant. At the close of its case, Westfield moved for a directed verdict. Westfield's motion for directed verdict was denied by the trial court. The jury returned a verdict in favor of GEM for $78,486.40. The verdict was then molded by the trial court to include interest. Post-trial motions were denied. This timely appeal followed.[1]

1. This case was originally appealed to this Court on August 31, 1990. A panel of this Court transferred the case to the Commonwealth Court because the appeal involved the application and interpretation of the Public Work's Contractors' Bond Law and the bond requirements of the School Code of 1949. *See General Equipment v. Westfield Ins.*, 405 Pa.Super. 550, 592 A.2d 1349 (1991). On April 22, 1993, the Common-

On appeal, Westfield raises the following issues for our review:

1. DID APPELLEE FAIL TO PROVE A PRIMA FACIE CASE, SINCE IT OFFERED NO EVIDENCE OF THE REASONABLE COST TO COMPLETE THE UNFINISHED WORK?

2. WAS THE VERDICT CONTRARY TO APPELLEE'S JUDICIAL ADMISSIONS?

3. DID THE COURT ERR IN EXCLUDING EVIDENCE OF THE PERCENTAGE OF COMPLETION AND THE REASONABLE COSTS OF COMPLETING THE WORK?

4. DID THE COURT ERR IN REJECTING EVIDENCE AND DISCOVERY REGARDING THE COMPONENTS OF APPELLEE'S BILLS?

5. DID THE COURT ERR IN WITHDRAWING APPELLANT'S DEFENSES FROM THE JURY?

6. DID THE COURT ERR IN PERMITTING APPELLEE TO SUBMIT EVIDENCE OF OTHER LAWSUITS FILED AGAINST APPELLANT?

(Westfield's Brief at 3).

In its first issue on appeal, Westfield contends that GEM failed to prove a *prima facie* case because it failed to offer any evidence relating to the reasonable cost of completing the unfinished work. Westfield argues that a contractor who is prevented from completing performance on a contract through no fault of his own is entitled to recover the contract price less the reasonable cost of completing the work. Westfield asserts that because GEM failed to prove the reasonable cost of completing the work, it did not make out a *prima facie* case,

wealth Court entered an order transferring the case back to this Court. Because neither party has objected to the exercise of jurisdiction by this Court, our jurisdiction has been perfected and thus we may address the merits of this appeal even though exclusive jurisdiction is vested in another appellate court. *See* 42 Pa.C.S.A. § 704(a); Pa.R.App.P. 741(a); *General Equipment v. Westfield Ins., supra* (Brosky, J. dissenting).

thus entitling Westfield to a judgment notwithstanding the verdict. We disagree.

A suretyship is evidenced by a contract and represents a three-party association where a creditor is entitled to performance of a contractual duty by the principal debtor or alternatively, if the debtor defaults, by the debtor's surety. *Continental Bank v. Axler*, 353 Pa.Super. 409, 510 A.2d 726 (1986), *appeal granted*, 516 Pa. 626, 532 A.2d 437 (1987), *appeal dismissed*, 518 Pa. 58, 540 A.2d 267 (1988). A surety may usually assert any defense of which his principal could take advantage. *McShain v. Indemnity Ins. Co. of North America*, 338 Pa. 113, 12 A.2d 59 (1940). Where the condition of a construction bond is that the obligor not only agrees that the contractor will fully perform his contract according to its terms, but will also pay "all lawful claims of subcontractors, materialmen, and laborers for labor performed and materials furnished in the carrying forward, performing or completing of said contract," the subcontractors, materialmen, and laborers are donee beneficiaries, and each can maintain an action on the bond to recover the amount due him for work done and materials furnished. *Commonwealth ex rel. Schnader v. Great American Indemnity Co.*, 312 Pa. 183, 167 A. 793 (1933). When determining the liability of a surety on a public construction surety bond, the proper place to start is the bond itself because the true intent and meaning of the instrument are the primary determinates of the extent of liability. *Salvino Steel & Iron Works Inc. v. Fletcher & Sons Inc.*, 398 Pa.Super. 86, 580 A.2d 853 (1990), *appeal dismissed*, 529 Pa. 62, 601 A.2d 806 (1992). A surety is not liable on a bond unless it appears that the work unpaid by the principal was completed pursuant to the contract that the bond purports to cover. *Commonwealth, to use of Sgarlat et al. v. Blockberger*, 324 Pa. 370, 188 A. 523 (1936); *Commonwealth, to use, v. Hartford Acc. & Ind. Co.*, 306 Pa. 513, 160 A. 113 (1932); *Commonwealth v. R.L. Bonham Co.*, 297 Pa. 514, 147 A. 611 (1929).

Instantly, the payment bond issued by Westfield as surety for Coco Brothers specifically states:

"NOW, THEREFORE, the condition of this obligation is such that if the said Contractor shall promptly make payment of all just claims for materials or machinery furnished and labor supplied or performed in the prosecution and completion of the work to be done under the terms of said contract, or any amendment or extension thereof, or addition thereto, to every person, firm, copartnership, association, or corporation, who, whether as *subcontractor or otherwise, has furnished materials or the use of machinery or supplied or·performed labor in the prosecution of said work, whether or not the said materials or use of machinery or labor entered into and became component parts of the work or improvements contemplated in said contract,* then this obligation shall be void; otherwise it shall be and remain in full force and effect.

"Every person, firm, copartnership, association or corporation who, whether as subcontractor or other furnished materials or supplied or performed labor or furnished machinery for use in the prosecution of the work as provided, and who has not been paid therefore, *may sue on this bond in accordance with the provisions of (a) to School Code of 1949, as amended and/or (b) the Public Works Contractor's Bond Law of 1967, as amended,* as the case may be; provided, however, that the School District shall not be liable for the payment of any costs or any suit.

(Emphasis added). Under this payment bond, the subcontractor (GEM) is entitled to payment for only the labor and materials supplied in the prosecution of the work. Thus, it was GEM's burden to prove the amount of labor and materials supplied to the project that remained unpaid before Coco Brothers' departure from the project in order to be entitled to recovery under the payment bond. Therefore, Westfield's insistence that GEM was compelled to show the reasonable cost of completing the work that remained under the subcontract when Coco Brothers was removed as general contractor is misplaced and is applicable only in situations where a general contractor is wrongfully removed from a project by

the owner. *See Hottinger v. Hoffman–Henon Co.*, 303 Pa. 283, 154 A. 598 (1931).

GEM met its burden of proving the amount of labor and materials supplied through the testimony of its president, James Majure, and the two representatives of the School Board, H. Edward Vero and Robert Capo. GEM also presented evidence which proved that Coco Brothers had failed to pay for $78,486.00 of the labor and materials supplied to the project while Coco Brothers was the general contractor. Thus, due to Coco Brothers' failure to pay for $78,486.00 worth of the labor and materials supplied to the project operated under its direction, GEM was entitled to payment from the surety, Westfield, pursuant to the payment bond. Accordingly, GEM met its burden of proof for seeking payment of the outstanding balance for labor and materials supplied to Westfield's principal, Coco Brothers, and Westfield's motion for judgment notwithstanding the verdict was properly denied by the trial court.

In its second issue on appeal, Westfield contends that GEM's allegation in its complaint that it had completed thirty-three percent of its subcontract with Coco Brothers constituted a judicial admission. Westfield argues, therefore, that GEM was only entitled to recover one-third of the subcontract price ($80,000.00) less the payments Coco Brothers had already made to GEM ($28,065.60), for a maximum total recovery of $51,034.40. We disagree.

A judicial admission is an express waiver made in court or preparatory to trial by a party or the party's counsel, conceding for the purpose of trial, the truth of the admission. *Jewelcor Jewelers & Distributors v. Corr*, 373 Pa.Super. 536, 542 A.2d 72 (1988). The mere fact that a party expressly or impliedly makes an admission in the pleadings does not entitle the admission to be considered as such until it is placed on the record. *Karnofsky Bros. v. Delaware & Hudson Co.*, 274 Pa. 272, 117 A. 783 (1924); *Farbo v. Caskey*, 272 Pa. 573, 116 A. 543 (1922); *Maryland Casualty Co. v. Specht*, 83 Pa.Super. 429 (1924); *Jameson v. Jameson*, 80 Pa.Super. 254 (1922). In

order to take advantage of the admission contained in the pleadings, the specific paragraphs of the pleadings in which the allegations appear must be offered into evidence. *Discovich v. Chestnut Ridge Transp. Co.*, 369 Pa. 228, 85 A.2d 122 (1952). Such admissions are properly placed in evidence when the specific parts of the statement, together with the defendant's answers not denying the averments, are offered into evidence. *Semple v. Kramer*, 83 Pa.Super. 161 (1924). An allegation in a pleading which is specifically denied in a defensive pleading does not constitute a judicial admission and may not be admitted into evidence. *Kann v. Bennett*, 223 Pa. 36, 72 A. 342 (1909); *Daniels v. Atkins*, 95 Pa.Super. 86 (1928).

In the instant case, Westfield, in its answer, specifically denied GEM's averment that one-third of the subcontract had been completed while Coco Brothers was the general contractor of the project. Westfield further asserted in its answer that GEM had only completed twenty-five percent of its subcontract with Coco Brothers. Accordingly, GEM's averment that it had completed thirty-three percent of the subcontract cannot constitute a judicial admission which would limit GEM's recovery to one-third of the subcontract price minus the payments Coco Brothers had already made to GEM. Therefore, the trial court properly denied Westfield's motion *in limine* to limit GEM's recovery to $51,034.40.

Westfield, in its third issue on appeal, maintains that the trial court committed error by excluding all evidence pertaining to either the percentage of the work completed on GEM's subcontract with Coco Brothers or the reasonable costs of completing the work after Coco Brothers left the project. Specifically, Westfield asserts that it should have been permitted to cross-examine GEM's president, James Majure, regarding the percentage of the subcontract completed by his company. Westfield further asserts that it should have been permitted to introduce into evidence the fact that GEM offered Coco Brothers a credit of $123,000.00 for the work deleted under its subcontract with Coco Brothers while receiving $172,000.00 from Coco Brothers' replacement as general contractor on the project, the McAnallen Corporation, for the same work.

Westfield claims that such evidence was highly relevant to the amount due to GEM under its subcontract with Coco Brothers and its improper exclusion entitles Westfield to a new trial. We disagree.

■ Questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Leonard v. Nichols Homeshield Inc.*, 384 Pa.Super, 1, 5, 557 A.2d 743, 745 (1989); *Lewis v. Pruitt*, 337 Pa.Super. 419, 487 A.2d 16 (1985). Relevance is a threshold consideration in the determination of the admissibility of evidence. *Whyte v. Robinson*, 421 Pa.Super. 33, 38, 617 A.2d 380, 383 (1992); *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. 611, 618, 537 A.2d 334, 338 (1988). Pennsylvania trial judges enjoy broad discretion regarding the admissibility of potentially misleading and confusing evidence. *Whyte v. Robinson, supra* at 38, 617 A.2d at 383; *Daset Mining Corp. v. Industrial Fuels Corp.*, 326 Pa.Super. 14, 22, 473 A.2d 584, 588 (1984).

■ As stated earlier, under its claim pursuant to the payment bond, GEM was only entitled to recover from Westfield for the labor and materials it had supplied in the prosecution of the work for which it had not already received payment from Coco Brothers. Thus, evidence concerning what percentage of the subcontract GEM had completed, how much of a credit GEM gave Coco Brothers for work uncompleted under the subcontract, and how much GEM was paid by the McAnallen Corporation for the uncompleted work on the project was irrelevant to the issue of whether GEM had in fact supplied the labor and materials to the project for which it was claiming that Coco Brothers had failed to pay. Because the admission of such evidence was not relevant to the issue of whether GEM had supplied labor and materials to the project while Coco Brothers had been the general contractor for which it had not been paid had the potential to mislead and confuse the jury regarding the issue before it, we find no abuse of discretion in the trial court's determination to exclude this evidence.

In its fourth issue on appeal, Westfield contends that after the trial court rejected its attempt to present evidence regarding GEM's percentage of completion on its subcontract and the reasonable costs of completing the work, the trial court erroneously refused to permit Westfield to present evidence on these same issues through the cross-examination of GEM's president, James Majure. Westfield argues that the trial court erred by refusing to allow it to cross-exam James Majure regarding the various components of GEM'S invoices to Coco Brothers and whether he had brought to records supporting GEM's invoices to court. Westfield further argues that the invoices in and of themselves did not constitute adequate proof that there was an unpaid balance on the invoices due to GEM. Finally, Westfield further asserts that Judge McGowan committed reversible error by denying Westfield's motion to compel GEM to produce all of its records pertaining to the calculation of its invoices to Coco Brothers.

The scope and limits of cross-examination are within the trial court's sound discretion, and the exercise of that discretion will not be reversed in the absence of a clear abuse of discretion or an error of law. *In re Townsend's Estate* 430 Pa. 318, 241 A.2d 534 (1968); *Kemp v. Qualls,* 326 Pa.Super. 319, 473 A.2d 1369 (1984). In setting limits on cross-examination, the trial court may consider whether the cross-examination would be likely to confuse or mislead the jury. *Commonwealth v. Monroe,* 373 Pa.Super. 618, 542 A.2d 113 (1988), *appeal denied,* 522 Pa. 574, 559 A.2d 36 (1989); *Commonwealth v. Hammond,* 308 Pa.Super. 139, 454 A.2d 60 (1982). The defendant should never be permitted to put in his defense under the cover of cross-examination. *In re Rogan's Estate,* 404 Pa. 205, 171 A.2d 177 (1961). A witness can be contradicted only on matters germane to the issue being tried, and the test of materiality of a fact brought out on cross-examination is whether the party cross-examining would be entitled to prove it as part of his own case. *Herr v. Erb,* 163 Pa.Super. 430, 62 A.2d 75 (1948). Where direct testimony of a witness has been ruled out, the adverse party cannot be permitted to introduce such evidence under the pretense of

cross-examining his adversary's witness. *Commonwealth v. Roth,* 71 Pa.Super. 71 (1919).

■ Instantly, the trial court properly refused to permit Westfield to present evidence regarding the percentage of the subcontract which GEM had completed and the cost of completion through the cross-examination of James Majure that had been excluded in the pre-trial motion *in limine.* Because Westfield was not entitled to present this evidence directly as part of its own case, the trial court properly precluded Westfield from introducing this evidence under the guise of its cross-examination of James Majure.

■ Additionally, Westfield's claim that GEM has relied upon unsupported invoices as its basis to recover on the payment bond is disingenuous. Our review of the record indicates that GEM relied not only upon the testimony of James Majure in support of its claim that it was entitled to payment for unpaid balance of the work that it had completed under the subcontract, but also supported its claim with the testimony of two representatives of the School Board. Moreover, GEM also presented evidence from the transcript of the arbitration between Coco Brothers and the School Board in which John Coco, Jr. admitted that his company owed GEM for unpaid work. Thus, we hold that Westfield's claim that GEM has sought payment through the use of unsupported invoices to be without merit.

Westfield's final assertion in its fourth issue on appeal is that Judge McGowan committed reversible error by denying Westfield's motion to compel production of all GEM's records pertaining to the preparation of the invoices that it sent to Coco Brothers for payment. Westfield contends that the requested documents were relevant to the amount of money GEM claimed it was due, as well as to Westfield's defense that the invoices were excessive in relation to the work actually completed under the subcontract.

We note that it is the duty of the appellant to supply this Court with a record which is sufficient to permit a meaningful appellate review. *School District of Aliquippa, et al. v.*

*Maryland Casualty Company,* 402 Pa.Super. 569, 575, 587 A.2d 765, 768–69 (1991). A failure by the appellant to insure that the original record certified for appeal contains sufficient information to conduct a meaningful appellate review constitutes a waiver of the issue sought to be reviewed. *Burns v. Kabboul,* 407 Pa.Super. 289, 313 n. 1, 595 A.2d 1153, 1165 n. 1 (1991). The Pennsylvania Rules of Appellate Procedure provide specific steps that are to be taken in absence of a transcript to a proceeding which is the subject of an appeal. Pa.R.App.P. 1923 instructs an appellant as follows:

> If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the lower court for settlement and approval and as settled and approved shall be included by the clerk of the lower court in the record on appeal.

The purpose of Pa.R.App.R. 1923 is to provide a reviewing court with an "equivalent picture" of the proceedings when there is no transcript of the proceedings. *Oblon v. Ludlow–Fourth Corp.,* 406 Pa.Super. 591, 604–05 n. 9, 595 A.2d 62, 69 n. 9 (1991); *Commonwealth v. Buehl,* 403 Pa.Super. 143, 148 n. 7, 588 A.2d 522, 524 n. 7 (1991).

*Boyle v. Steiman,* 429 Pa.Super. 1, 6, 631 A.2d 1025, 1030 (1993).

Instantly, Westfield has neither furnished a transcript of the oral argument of its motion to compel production of documents before Judge McGowan nor attempted to reconstruct these proceedings in accordance with Pa.R.App.R. 1923. Thus, this Court is without a clue as to what transpired at the oral argument or upon what basis Judge McGowan denied Westfield's motion to compel the production of documents while directing GEM to answer Westfield's second and third

interrogatories by utilizing the transcript of the arbitration proceeding between Coco Brothers and the School Board. Accordingly, absent a transcript of the proceedings before Judge McGowan or a Pa.R.App.R. 1923 summary of those proceedings, this Court is without an adequate record to decide whether that Judge McGowan erred by denying Westfield's motion to compel the production of documents and this issue has been waived for the purposes of appeal.

In its fifth issue on appeal, Westfield maintains that the trial court erred by failing to instruct the jury regarding the various defenses it raised to GEM's claim at trial. Specifically, Westfield submits that the trial court improperly failed to instruct the jury that GEM had only completed twenty-five percent of its subcontract with Coco Brothers, that the School Board has asserted a $30,000.00 back charge against Coco Brothers for GEM's defective work, that Westfield was entitled to receive the difference between the $123,000.00 credit it received from GEM and the $172,000.00 GEM received from the McAnallen Corporation for the completion of the same work, and that Westfield was entitled to an additional credit of $9,200.00 for other deleted work. Finally, Westfield asserts that the trial court also erred by instructing the jury that it was obligated to award GEM "all or nothing" of its claim. Thus, Westfield concludes that due to the trial court's erroneous jury instructions, it is entitled to a new trial.

 The purpose of charging the jury is to clarify the issues which the jurors must determine. *Wood v. Smith,* 343 Pa.Super. 547, 550, 495 A.2d 601, 603 (1985). In determining whether to reverse a jury verdict due to an erroneous jury charge, an appellate court must look at the jury charge as a whole; if the charge inaccurately describes the law, there is error. *Reilly by Reilly v. Southeastern Pennsylvania Transp. Authority,* 507 Pa. 204, 489 A.2d 1291 (1985); *Summit Fasteners Inc. v. Harleysville Nat. Bank,* 410 Pa.Super. 56, 599 A.2d 203 (1991), *appeal denied,* 530 Pa. 633, 606 A.2d 902 (1991). Alleged errors in the jury instructions must be considered in relation to the entire charge and in light of the evidence presented. *Clayton v. Sabeh,* 406 Pa.Super. 335, 594

A.2d 365 (1991), *appeal denied,* 529 Pa. 639, 600 A.2d 1257 (1991). In order to constitute reversible error, a jury instruction must not only be erroneous, but must also be harmful to the complaining party. *Summit Fasteners Inc. v. Harleysville Nat. Bank, supra* 410 Pa.Super. at 62, 599 A.2d at 206; *Jistarri v. Nappi,* 378 Pa.Super. 583, 588, 549 A.2d 210, 213 (1983).

Our review of the record indicates that Westfield's claims that the trial court failed to instruct the jury regarding its defenses to GEM's claim are dependent either upon Westfield's unsupported allegation that GEM was responsible for Coco Brothers' failure to recover all that it had claimed it was due in its arbitration proceeding against the School Board or upon evidence that had been properly excluded through GEM'S pre-trial motions *in limine.* Additionally, our review of the record reveals that the trial court did not, as Westfield claims, instruct the jury that it must decide GEM's claims on an all or nothing basis. Rather, the trial court properly instructed the jury that it could, if it were so inclined, reach a compromised verdict. (N.T. 3/16/90 at 369). Thus, we hold that Westfield's assertions that the trial court erroneously instructed the jury are without merit.

In its final issue on appeal, Westfield contends that the trial court committed error by permitting GEM to cross-examine Westfield's witness, John J. Coco, Jr., regarding Coco Brothers' failure to pay other subcontractors on the project.[2] Westfield argues that the trial court improperly allowed GEM to introduce during its cross-examination of John Coco, Jr. evidence that other subcontractors on the project had brought lawsuits to recover payment for unpaid

---

2. A witness may be questioned as if on cross-examination when his interest is adverse to the party calling upon him to testify. *Gaul v. Consolidated Rail Corp.,* 383 Pa.Super. 250, 556 A.2d 892 (1989) *appeal denied,* 524 Pa. 621, 571 A.2d 383 (1989). Instantly, because John Coco, Jr.'s employer, Coco Brothers, is ultimately liable to its surety, Westfield Insurance Company, for any judgment rendered in favor of GEM, John Coco, Jr. was properly called upon as a hostile witness and correctly questioned as if on cross-examination. *See Dinger v. Friedman,* 279 Pa. 8, 13–14, 123 A. 641, 642–43 (1924).

work and that in these lawsuits Westfield was asserting the same defenses to their claims as it was alleging against GEM's claim. Westfield maintains that any reference to other pending judicial proceedings to show that a party is litigious or fails to honor its obligations constitutes reversible error. Thus, Westfield concludes that it is entitled to a new trial due to the erroneous admission of this evidence.

Where a party is called as a witness by his adversary, as on cross examination, leading questions may be put to him, and there may be drawn from him any facts or admissions which weaken his case or strengthen his adversary's case. *Brubaker's Administrator v. Taylor*, 76 Pa. 93 (1874). *See also* 42 Pa.C.S.A. § 5935. The witness is considered as if originally offered and examined on his own behalf and his testimony may be contradicted by proof of inconsistent declarations made out of court without giving him an opportunity of explaining. *Id.; Kimble v. Wilson*, 352 Pa. 275, 42 A.2d 526 (1945); *Cronkite v. Trexler*, 187 Pa. 100, 41 A. 22 (1898). Evidence of similar acts or transactions is inadmissible when irrelevant to the issues in the case. *Steinberg v. M. Nathan & Bro. Inc.*, 300 Pa. 496, 150 A. 899 (1930); *Veit v. Class and Nachod Brewing Company*, 216 Pa. 29, 64 A. 871 (1906); *Caulfield v. Aetna Life Ins. Co. of Hartford Conn.*, 144 Pa.Super. 257, 19 A.2d 575 (1941). Thus, the law will not consider evidence that a person has done a certain act at a specific time as probative of a contention that he has done a similar act at another time. *Roney v. Clearfield County Grange Mut. Fire Ins. Co.*, 332 Pa. 447, 3 A.2d 365 (1939); *Jamestown Iron and Metal v. Knofsky*, 302 Pa. 483, 154 A. 15 (1930); *Keiter v. Miller*, 111 Pa.Super. 594, 170 A. 364 (1934). While the commission of an act charged cannot be proved by showing the commission of a like act at a different time, an exception to this rule exists where knowledge or intent is a material fact to be proved. *Baumeister v. Baugh & Sons Co.*, 142 Pa.Super. 346, 353, 16 A.2d 424, 427 (1940); *Keiter v. Miller, supra* 111 Pa.Super. at 596, 170 A. at 365. Under such circumstances, evidence of similar acts or transactions is admissible when relevant to prove an issue in the case. *Laney v.*

*Columbia Natural Gas Co.,* 305 Pa. 527, 158 A. 266 (1931). Accordingly, evidence of a course of conduct or dealing followed by a person may be admitted to prove that he acted in accordance with it on a given occasion, provided such a course of conduct or dealing is shown to have been continuous and systematic. *Pennsylvania Company v. Philadelphia Electric Co.,* 331 Pa. 125, 200 A. 18 (1938); *White v. Rosenthal,* 173 Pa. 175, 33 A. 1027 (1896).

Instantly, during its cross-examination of John Coco, Jr., GEM elicited evidence that Coco Brothers had previously admitted in its arbitration proceeding with the School Board that it owed GEM and other subcontractors for labor and materials supplied to the project. GEM further elicited testimony from John Coco, Jr. that, after Coco Brothers had received an arbitration award which was significantly less than it had sought, it changed its position regarding the subcontractors' claims against it and asserted that it owed the subcontractors nothing, thus compelling the subcontractors to file lawsuits in order to be paid for labor and materials that Coco Brothers had previously maintained the subcontractors had supplied to the project. Accordingly, this evidence was properly admitted by the trial court as it tended to both weaken Westfield's case and strengthen GEM's case, *see Brubaker's Administrator v. Taylor, supra,* while establishing a continuous and systematic course of dealing by Coco Brothers and Westfield with the subcontractors whose outstanding claims for unpaid labor and materials supplied to the project were involved in the arbitration proceeding between Coco Brothers and the School Board.

Based upon the foregoing, the judgment for $92,221.53 entered in favor of GEM is affirmed.

Judgment affirmed.