### Scott v. Scott

394

C.P. of Montgomery County, no. 94-20504.

*Christopher Staub,* for plaintiff.
*Kenneth Spiegel,* for defendant.

NICHOLAS, *P.J.,* May 24, 1995—This opinion is necessitated by wife's appeal to the Superior Court of Pennsylvania from our order of support dated February 22, 1995, which granted husband's petition to credit previously made overpayments on court ordered support to his current spousal support obligation.

On July 12, 1976, this court ordered husband, Melvin, to pay $175 per week to support wife, Deborah, and their three children. Melvin's account fell into arrears but he made good faith efforts to bring his account current. On March 14, 1980, we ordered Melvin to pay $210

each week in unallocated spousal and child support beginning April 7, 1980. With a payment made March 30, 1981, he began the practice of paying $10 each week toward arrears and, on October 3, 1983, achieved a positive balance. He continued to pay the $210 per week required by the order, and an extra $10 each week, through the Montgomery County Domestic Relations Section. On February 13, 1984, he began the practice of paying an extra $60 each week to the domestic relations section. By the end of 1993, Melvin had paid $31,335 in excess of his support obligation under the order.

On April 25, 1994, Melvin filed his petition to modify, alleging that his three children were emancipated and should be removed from the support order. The Conciliator in Support, Frederick Cohen, Esquire, agreed that Melvin should no longer be required to pay child support, but recommended an order of spousal support in the sum of $440 per week, effective April 25, 1994. On October 13, 1994, we entered Conciliator Cohen's recommendation as an order of this court. Melvin responded by paying $200 each week and by filing exceptions on October 24, 1994. This court ordered the attachment of Melvin's wages on November 28, 1994. On January 25, 1995, Melvin filed his petition for emergency hearing to vacate wage attachment, arguing that the attachment was improper because his account, at that point, reflected an overpayment credit of approximately $18,000. Melvin did not contest the appropriateness of the $440 weekly spousal support figure.

The parties presented evidence at a hearing before the undersigned on February 22, 1995. Melvin testified as to his reason for the overpayments. He said that he was employed as a lineman and that, in 1980, he was injured

on the job and unable to work for five months. His worker's compensation income was insufficient for him to pay both his living expenses and his support obligation, and his account fell into arrears. When he returned to work he was able to bring his account current but feared that he might someday again be unable to meet his support obligation. His job is hazardous and he wanted protection against the possibility that he might again suffer injury. For this reason, he overpaid to build up a credit toward his future support obligation. He continued to make the overpayments but never told Deborah why he was making them. Nor did she ask. Melvin routinely made the overpayments and did not know the size of his credit until he filed for divorce in 1994. When asked during cross-examination whether he was partly motivated by the desire to see his children enjoy a more comfortable lifestyle he responded, "I would always want my children to enjoy a higher standard of living, but I was also building a credit." (N.T., 2/22/95, p. 13.) Also during cross-examination, he reiterated that he never discussed with Deborah the subject of the overpayments. For her part, Deborah testified that she asked Melvin for more money "around 1985 . . . [p]robably 1985, 1986." (N.T., 2/22/95, p. 34.) She testified that Melvin orally promised to pay her an additional $50 each week and that she never saw any need to petition for a modified support order. She thought the overpayments were intended for the children.

After closing arguments, we announced our decision and rationale. (N.T., 2/22/95, pp. 48-52.) We entered our order of support dated February 22, 1995, setting the spousal support amount at $440 each week and requiring Melvin to pay $375 each week. We thus allowed Melvin to apply $65 of his credit each week. Deborah filed her

notice of appeal on March 23, 1995 whereupon we ordered her to file her concise statement of matters complained of on appeal. She filed her concise statement on April 5, 1995, raising six contentions on appeal.

## DISCUSSION

A support obligor who overpays and accumulates a credit is generally entitled to apply the credit to future obligations so long as the overpayments were intended as future support and not as gifts. Overpayments are presumed to have been intended as gifts, but this presumption can be overcome by proof to the contrary.

*Commonwealth ex rel. Silverman v. Silverman,* 180 Pa. Super. 94, 117 A.2d 801 (1955) was a case of first impression. In *Silverman,* the husband was ordered to pay $5 per week for the support of his child. For half the time he paid $10 and thus made overpayments totaling $1,025. The court forwarded these payments to his wife. Upon the wife's petition, the husband's support obligation was then increased to $10 per week. Instead of paying $10 per week, the husband paid $5 per week for 15 weeks. The husband was brought before the trial court for contempt. He testified that he made the overpayments intending to build a credit he could apply to his support obligation should he become otherwise unable to pay. The wife testified that he made the overpayments pursuant to an oral agreement whereby he would make overpayments in exchange for her not petitioning for an increase in the order. The trial court credited the wife's testimony and "was not impressed with the sincerity and truthfulness of the defendant." *Id.* at 97, 117 A.2d at 802. Accordingly, the trial court declared the husband to be in contempt.

The Superior Court affirmed on different grounds. The contract between the parties was void as against public policy.[1] However, the fact remained that the husband never intended the overpayments to be future support. From this, and the fact that the overpayments averaged "approximately $2.50 a week in excess of the very small order, . . . " the Superior Court held that the husband's overpayments were gratuitous. *Id.* at 97, 117 A.2d at 802.

In *Shovlin v. Shovlin,* 318 Pa. Super. 516, 465 A.2d 673 (1983), the trial court increased the amount of the husband's weekly obligation but gave the husband "credit, to be applied to the new support obligation, for payments made in excess of the old support order." *Id.* at 517, 465 A.2d at 674. The Superior Court's review of the record showed that the trial court committed no abuse of discretion when it found that the overpayments were intended to provide future support. "While excess payments are normally considered gratuitous and do not form the basis for credit, the court below found otherwise." *Id.* at 520, 465 A.2d at 675. Moreover, the Superior Court noted that the wife was not entitled to a windfall.

In *Miller v. Miller,* 353 Pa. Super. 194, 509 A.2d 402 (1986), the child became emancipated in June of 1984, and the husband's support obligation terminated. However, the husband continued to make direct payments of $160 each month. On November 25, 1985, the trial court ordered

---

1. *Silverman* has been cited for the proposition that "a child's entitlement to support is a right that arises from the parent-child status; it is not a property right, and cannot be 'bargained away' by contract." *Commonwealth of Pennsylvania, Department of Public Welfare ex rel. Hager v. Woolf,* 276 Pa. Super. 433, 438-39, 419 A.2d 535, 538 (1980).

the husband to pay $300 each month effective June 14, 1984. In doing so, the trial court refused to credit the husband for any of the direct payments. This was reversible error. The Superior Court held that "[the husband] must receive credit for payments made to [the child] since June 1984, except for those contributions which have previously been designated as gifts." *Id.* at 198, 509 A.2d at 404.

In *Bradley v. Bradley,* 387 Pa. Super. 503, 564 A.2d 504 (1989), the husband made mortgage payments totaling $4,666 on the house where the wife and children lived even though the support order did not obligate him to do so. The trial court granted the husband credit for half of the mortgage payments and allowed him to apply the credit to arrearage. The Superior Court affirmed, reasoning that the trial court acted within its discretion since the husband acted beyond his obligation.

In the instant case, we observed the witnesses and listened carefully to their testimony. Melvin's testimony was sincere and we believed his explanation as to why he made the overpayments. He was concerned that he might someday be injured and thereby unable to make support payments. To obviate the hardship this would visit upon his children, he built up a credit to use in case of emergency.[2] We found Deborah's testimony incredible. From

---

2. We considered whether the size of the credit eroded the credibility of husband's testimony and concluded that it did not. At its maximum amount, the credit represented slightly less than three years worth of support payments. This seems excessive, but, the magnitude of the credit is explained by the hazardous nature of Melvin's employment; serious injury might have left him incapacitated for a period of years. Moreover, Melvin's conscientiousness, his habit of overpayments, and his apparent lack of guile, persuaded us to credit his testimony.

the tenor of her responses we do not believe she asked Melvin to supplement his support obligation. We do not believe he ever promised to do so. After careful consideration of the evidence, we concluded that Melvin intended the overpayments to be future support, not gifts. Accordingly, we ruled that Melvin has the right to apply his past overpayments to his future obligation.

However, we also ruled that Melvin's right is conditional. It is within the discretion of the trial court to determine, under all the circumstances, what is just and equitable. *Hartley v. Hartley,* 364 Pa. Super. 430, 434, 528 A.2d 233, 235 (1987). Our order of support dated February 22, 1995 was narrowly tailored to strike the best balance between Melvin's right to apply his credit and Deborah's right to receive support. We limited Melvin's recoupment to $65 each week. This allows Melvin the benefit of his overpayments and at the same time insulates Deborah from undue hardship. We made our order mindful of the admonition that "the law contemplates that provision shall be made for those in need, at the time they are in need, and those responsible for providing these present needs cannot avoid future liability solely because of past contributions." *Silverman, supra* at 98, 117 A.2d at 803.

We now turn to the issues raised by appellant in her concise statement. She first argues, "The trial court improperly charged plaintiff with a credit on her spousal support account when the credit accrued of record under an unallocated order for plaintiff and three children." Concise statement ¶1. This point asserts merely that the outcome was incorrect. We have already explained our rationale for our order of support dated February 22, 1995. (See N.T., 2/22/95, pp. 48-52.)

Second, appellant argues, "The trial court's finding that defendant's testimony was credible was an abuse of discretion as defendant's testimony was not supported by competent evidence and defendant's testimony was patently incorrect." Concise statement ¶2. We disagree. It is beyond dispute that "the demeanor and credibility of witnesses are issues solely for the trier of fact." *Melzer v. Witsberger,* 505 Pa. 462, 476 n.9, 480 A.2d 991, 998 n.9 (1984).

Third, appellant argues, "Defendant's admitted failure to notify plaintiff of his reason or purpose for overpaying the support account precluded him from later claiming credit on said account." Concise statement ¶3. See also, Concise statement ¶6. We disagree. First, none of the authorities discussed above required the overpaying obligor to give notice of the purpose of the overpayments. Second, while notice might avoid a misunderstanding and be good practice, the consequence attaching to lack of notice should not be a forfeiture of payments intended to be future support.

Fourth, appellant argues, "The trial court erred in refusing to permit plaintiff to introduce evidence concerning the parties' respective income and expenses[3] during the 10 year period that the credit on the support account accrued, which said evidence would have demonstrated that over the years defendant accrued a credit . . . he was actually grossly underpaying what would be a fair and reasonable amount of spousal and child support." Concise statement ¶4. We disagree. "Relevance is a threshold consideration in the determination of the admissibility

3. This refers to joint tax returns for years 1985, 1987, 1989 and 1990. (N.T., 2/22/95, pp. 32-33.)

of evidence." *General Equipment Manufacturers v. West-field Insurance Company,* 430 Pa. Super. 526, 543, 635 A.2d 173, 182 (1993), *appeal denied,* 537 Pa. 663, 644 A.2d 1200 (1994). "Evidence is relevant, and therefore admissible, if it logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact." *Taliferro v. Johns-Manville Corp.,* 421 Pa. Super. 204, 215-16, 617 A.2d 796, 803 (1992). (emphasis omitted) Evidence is inadmissible when irrelevant. *Id.* at 215, 617 A.2d at 802. Here, the evidence proffered by Deborah was irrelevant. The issue at the hearing was whether Melvin intended the overpayments to be gifts or future support. According to Deborah's offer of proof, the parties' joint tax returns would have shown that "[Melvin] was probably paying about a third of what a court would have imposed and required him to do." (N.T., 2/22/95, p. 33.) Even if this were so, the fact remains that Deborah never petitioned for a modification, and the court could not, in effect, grant her a retroactive increase in support by denying the credit we found was due, crediting Melvin's testimony over Deborah's, as we did. We did not find that Melvin overpaid in lieu of a petition to increase being filed by Deborah.

Fifth, appellant argues that, "Defendant's allegation in a pleading filed with the court concerning his reason for overpaying the support account precluded him from later claiming different reasons." Concise statement ¶5. She refers to Melvin's petition for emergency hearing to vacate wage attachment ¶5 where he alleged that he "consistently overpaid the support order in this matter while the parties'

children were minors so that they could enjoy a higher standard of living." First, this allegation is not a judicial admission. "It is well established that a judicial admission is an express waiver made in court or preparatory to trial by a party or his attorney, conceding for the purposes of trial, the truth of the admission." *Nasim v. Shamrock Welding Supply Co.,* 387 Pa. Super. 225, 228, 563 A.2d 1266, 1267 (1989), *appeal denied,* 525 Pa. 619, 577 A.2d 890 (1990). Thus, an allegation cannot be a judicial admission unless it "admit[s] of one specific meaning, . . . ." *Dible v. Vagley,* 417 Pa. Super. 302, 314, 612 A.2d 493, 499 (1992), *appeal denied,* 535 Pa. 619, 629 A.2d 1380 (1993). Melvin's allegation is ambiguous because it lacks a frame of reference. On the one hand, the allegation can be read to mean that Melvin wanted his children to enjoy a standard of living higher than that allowed by the $210 per week he was required to pay. This implies that the overpayments were gifts. On the other hand, the allegation can be read to mean that Melvin wanted his children to enjoy a standard of living higher than they would if he became injured and unable to pay $210 per week. This implies that the overpayments were future support. While either interpretation is reasonable, the latter makes the most sense when the petition is read as a whole. Melvin filed his petition in order to get the benefit of his overpayments. This is inconsistent with the overpayments as gifts. Melvin credibly testified that he merely signed the petition as prepared by counsel. The wording of the petition did not serve to undermine the credibility of Melvin's testimony. Second, assuming arguendo that the allegation is a judicial admission, Deborah waived her right to contend that Melvin is bound by it. "In order to take advantage of the admission con-

tained in the pleadings, the specific paragraphs of the pleadings in which the allegations appear must be offered into evidence." *General Equipment, supra* at 541-42, 635 A.2d at 181. Here, Deborah did not proffer the allegation as substantive evidence. Instead, she used it to impeach Melvin during cross-examination. (N.T., 2/22/95, p. 13.) She treated the allegation as a rebuttable evidentiary admission and not as an irrebuttable judicial admission. See generally, 29A Am.Jur.2d, Evidence §772. Third, the allegation of error set out at ¶5 of the concise statement was not preserved for review. "In order to preserve an issue for appellate review a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court." *Boyle v. Steiman,* 429 Pa. Super. 1, 10, 631 A.2d 1025, 1030 (1993), *appeal denied,* 538, Pa. 663, 649 A.2d 666 (1994). "A party may not remain silent and take his chances on the verdict then complain if it is adverse." *Id.* Here, Deborah should have advanced her contention, at the latest, when Melvin testified as to why he overpaid. Instead, she waited to raise it, for the first time, on appeal. This is too late. In any event, under the circumstances, we would have exercised our discretion and allowed Melvin to explain.

For these reasons, our order of support dated February 22, 1995 should be affirmed. We note that a trial court's order of support will not be disturbed absent a clear abuse of discretion or error of law, and that "[a] finding of such abuse is not lightly made and must rest upon a showing of clear and convincing evidence." *Bradley, supra* at 506, 564 A.2d at 505.