803 A.2d 1186

**Rosemary MASCARO, Appellant,**

v.

**Joseph MASCARO, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 14, 2001.

Decided Aug. 20, 2002.

David J. Draganosky, Lansdale, David S. Rasner, Lawrenceville, NJ, Mark Randolph Ashton, Exton, for Rosemary Mascaro.

Rochelle B. Grossman, David L. Ladov, Plymouth Meeting, for Joseph Mascaro.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Justice NEWMAN.

We granted appeal in this matter to determine whether the support guidelines, Pa.R.C.P.1910.16–1–1910.16–7,[1] apply to spousal support cases where the parties' combined net income exceeds $15,000 per month ($180,000 per year).[2] Because we hold that they do apply, we reverse the decision of the Superior Court, which held that in such cases, spousal support is calculated pursuant to *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d 991 (1984).

## FACTS AND PROCEDURAL HISTORY

Joseph Mascaro (Husband) and Rosemary Mascaro (Wife) were married in August of 1978, and separated in October of 1994. They had one child, born on November 14, 1984. On June 4, 1996, Wife filed a Complaint for Support, and on September 25, 1996, a master issued a recommendation that Husband pay Wife $2,500 per week ($130,000 per year) tax free for spousal and child support.[3] Both parties filed excep-

1. All citations to the Pennsylvania Rules of Civil Procedure refer to the most recent version of the rules.

2. Although the instant matter involves spousal support, the same principles would apply in a case where the obligee receives alimony pendente lite because the formula for calculating spousal support and alimony pendente lite is identical. Pa.R.C.P. 1910.16–4.

3. Pa.R.C.P. 1910.16–4(f)(1) provides:

 An order awarding both spousal and child support may be unallocated or state the amount of support allocable to the spouse and the amount allocable to the child. However, the formula provided by these rules assume that an order will be unallocated. Therefore, if

tions, following which the trial court held a de novo hearing. The trial court determined that Husband had monthly after-tax income of nearly $52,000 ($624,000 per year). The parties agreed that Wife had no earning capacity.

On June 10, 1998, the trial court ordered Husband to pay Wife $19,786 per month ($237,432 per year) in child and spousal support. Husband sought reconsideration of the June 10, 1998 award, which the trial court granted by Order dated June 29, 1998. On May 4, 1999, the trial court ordered Husband to pay Wife $13,000 per month ($156,000 per year) as tax-free unallocated spousal and child support. The court determined that where monthly income exceeds the limit provided in the support guidelines, both child support and spousal support must be calculated pursuant to the formula set forth in *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). On appeal, the Superior Court affirmed the order of the trial court.

## DISCUSSION

### Support Guidelines

Pa.R.C.P.1910.16–2(e)(2) clearly provides that when the parties' combined net income exceeds $15,000 per month ($180,-000 per year), child support shall be calculated pursuant to *Melzer*. The Rule further provides:

The presumptive minimum amount of child support shall be obligor's percentage share of the highest amount of support which can be derived from the schedule for the appropriate number of children and using the parties' actual combined income to determine obligor's percentage share of this amount. The court may award an additional amount of child support based on the parties' combined income and the factors set forth in *Melzer*. The *Melzer* analysis in high

the order is to be allocated, the formula set forth in this Rule shall be utilized to determine the amount allocable to the spouse. If allocation of an order utilizing the formula would be inequitable, the court shall make an appropriate allocation. Also, if an order is to be allocated, an adjustment shall be made to the award giving consideration to the federal income tax consequences of an allocated order as may be appropriate under the circumstances.

income child support cases shall be applied to all of the parties' income, not just to the amount of income exceeding $15,000 per month. In a *Melzer* analysis case, the presumptive minimum remains applicable.

Pa.R.C.P. 1910.16–2(e)(2).

■ In *Melzer*, we held that "the hearing court must first calculate the reasonable expenses of raising the children involved, based upon the particular circumstances—the needs, the custom, and the financial status—of the parties." *Melzer* at 995. Once the reasonable needs of the children have been determined, *Melzer* sets forth a formula to calculate each parent's support obligation. A determination of the reasonable needs of the children depends upon the standard of living that the obligor can afford, "not what he is willing to pay for." *Karp v. Karp*, 455 Pa.Super. 21, 686 A.2d 1325, 1328 (1996), *petition for allowance of appeal granted*, 549 Pa. 701, 700 A.2d 441 (1997), *appeal discontinued with prejudice* by Order of the Pennsylvania Supreme Court, dated September 16, 1998. Accordingly, an obligor may not force his or her children to live below the family's means.

The statutory basis for the support guidelines is found in Section 4322 of the Divorce Code, which provides:

(a) **Statewide guideline.**—Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly. The guideline shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention. The guideline so developed shall be reviewed at least once every four years.

**(b) Rebuttable presumption.**—There shall be a rebuttable presumption, in any judicial or expedited process, that the amount of the award which would result from the application of such guideline is the correct amount of support to be awarded. A written finding or specific finding on the record that the application of the guideline would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case, provided that the finding is based upon criteria established by the Supreme Court by general rule within one year of the effective date of this act.

23 Pa.C.S. § 4322.

Pa.R.C.P. 1910.16–1 sets forth the general principles regarding application of the support guidelines:

**(a) Applicability of the Support Guidelines.** The support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' net monthly incomes as defined in Rule 1910.16–2 and the number of persons being supported. The support of a spouse or child is a priority obligation so that a party is expected to meet this obligation by adjusting his or her other expenditures.

**(b)** The amount of support (child support, spousal support or alimony pendente lite) to be awarded pursuant to the procedures under Rules 1910.11 and 1910.12 shall be determined in accordance with the support guidelines which consist of the guidelines expressed as the child support schedule set forth in Rule 1910.16–3, the formula set forth in Rule 1910.16–4 and the operation of the guidelines as set forth in these rules.

. . .

**(d)** If it has been determined that there is an obligation to pay support, there shall be a rebuttable presumption that the amount of the award determined from the guidelines is the correct amount of support to be awarded. The support guidelines are a rebuttable presumption and must be applied taking into consideration the special needs and obligations of the parties. The trier of fact must consider the factors set forth in Rule 1910.16–5. The presumption shall

be rebutted if the trier of fact makes a written finding, or a specific finding on the record, that an award in the amount determined from the guidelines would be unjust or inappropriate.

Pa.R.C.P. 1910.16–1. The 1998 Explanatory Comment to this Rule indicates that the guidelines are based upon the Income Shares Model developed by the Child Support Guidelines Project of the National Center for State Courts. Because authoritative economic studies demonstrate the average amount of money that intact families with a monthly net income of $15,000 or less spend on their children, such amounts serve as the basic child support schedule set forth in Pa.R.C.P. 1910.16–3.

Pa.R.C.P. 1910.16–4 provides the following method by which to calculate spousal support or alimony pendente lite (APL) when the parties have dependent children:

PART IV. SPOUSAL SUPPORT OR APL

With Dependent Children

12. Obligor's Monthly Net Income (line 4)

_____

13. Less Obligor's support, alimony pendente lite or alimony obligations, if any, to children or former spouses who are not part of this action (See Rule 1910.16–2(c)(2))

(\_\_\_\_\_)

14. Less Obligee's Monthly Net Income (Line 4)

(\_\_\_\_\_)

15. Difference

_____

16. Less Obligor's Total Child Support Obligation (line 11)

(\_\_\_\_\_)

17. Difference

_____

18. Multiply by 30% [4] × .30

19. Amount of Monthly Spousal Support or APL _____

Pa. R.C.P. 1910.16–4(a) Part IV.

An award of child or spousal support determined under the support guidelines is a rebuttable presumption, from which the trier of fact may deviate under certain circumstances. Pa.R.C.P. 1910.16–5 provides:

(a) If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

Note: The deviation applies to the amount of the support obligation and not to the amount of income.

(b) In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) assets of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony pendente lite case, the period of time during which the parties lived together from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

4. Pa.R.C.P. 1910.16–4(a) Part IV provides that where the obligor does not have a child support obligation, the obligee receives forty percent of the difference between the obligor's net income and the obligee's net income as spousal support or APL. However, where the obligor does have a child support obligation, as in the instant matter, the obligee receives thirty percent of the difference between the obligor's net income and the obligee's net income.

Pa.R.C.P. 1910.16–5. Accordingly, the guidelines direct a finder of fact to calculate a spousal support or APL award according to the formula set forth in Rule 1910.16–4 and to deviate from that result according to the factors provided in Rule 1910.16–5.

Despite the existence of a framework to employ when determining a spousal support award, the trial court rejected the guidelines, and instead performed a *Melzer* analysis regarding the reasonable needs of Wife and the parties' child. In the absence of precedent of this Court, the trial court based its decision on its understanding of Superior Court cases including *Karp* and *Terpak v. Terpak,* 697 A.2d 1006 (Pa.Super.1997). In *Karp,* the trial court entered an unallocated, tax-free award of $45,670 per month ($548,040 per year) for the support of wife and the parties' four children. The *Karp* court performed a *Melzer* analysis with respect to the children's needs, and based its award of alimony pendente lite, on the standard of living that was consonant with the husband's significant disposable income. The Superior Court affirmed the trial court's order in *Karp.* The decision in *Karp* led the trial court in the instant matter to conclude that in high-income cases, spousal support is to be determined based on a reasonable needs analysis. The court also considered *Terpak,* a matter in which the trial court based spousal support on the guideline formula even though husband's monthly net income was more than $10,000 ($120,000 per year), which at the relevant time made this a high-income case. Pursuant to the formula, the trial court determined that the wife was entitled to support in the amount of $5,202.30 per month ($62,427.60 per year). However, it reduced that amount to $3,500 "upon its finding that [husband] was paying monthly premiums ($1,350) on an irrevocable life insurance trust established for the parties' two emancipated children, [wife's] retention of the marital residence at essentially no cost or expense, and the parties' prior standard of living." *Id.* at 1008. On appeal the Superior Court reversed the trial court because it determined that none of the reasons cited for deviating from the guideline amount were appropriate. In the case before us, the trial

court viewed *Karp* and *Terpak* as irreconcilable decisions, and elected to follow *Karp* as precedent for applying a *Melzer* analysis in high-income spousal support cases. However, as the Superior Court notes, the issue in *Karp* was whether the support order was excessive, and the issue in *Terpak* was whether a deviation from the guidelines was appropriate considering the facts of the case. *Mascaro v. Mascaro*, 764 A.2d 1085, 1087 (Pa.Super.2000). In neither case did the Superior Court address the specific issue presented by the instant matter, namely whether spousal support orders in high-income cases are based on the guideline formula or on the reasonable needs of the obligee. Therefore, although the trial court considered itself faced with inconsistent precedent, there was actually no direct precedent at all.

It is clear that "[w]hen the parties' combined net income exceeds $15,000 per month [$180,000 per year] child support shall be calculated pursuant to *Melzer*...." Pa.R.C.P 1910.16–2. In the instant matter, the Superior Court correctly noted, "[a]s to child support, the guidelines recognized that they were not applicable to high income cases because the model does not contain data which would establish the children's reasonable needs." *Mascaro* at 1088. Where we disagree with the Superior Court is in its analysis regarding the application of the spousal support guidelines to high-income cases. The Superior Court stated:

> Our research has not revealed any data in the guidelines model that make the guidelines applicable to spousal support in high income families. Therefore, we conclude that the guidelines are not designed to calculate spousal support in high income families where after tax income exceeds $15,000.00 per month. To conclude otherwise, would result in awards that were not contemplated by the model which underpins the guideline system and one that is not based on an analysis of the reasonable needs of the dependent spouse. In such high income cases, the determination of spousal support, as in high income child support cases, must be based on the factors found in *Melzer*. In the absence of

a statement in the guidelines themselves that they are applicable, we conclude they are not.

*Id.* at 1088–1089. The Superior Court erroneously concludes that the spousal support guidelines cannot apply in cases where monthly net income exceeds $15,000 ($180,000 per year) because no data in the model supports applying them in this situation. The model that the Superior Court refers to is the income shares model, which is referenced in the Explanatory Comment to Pa.R.C.P. 1910.16–1, and has been defined as follows:

> The Income Shares model calculates child support as the share of each parent's income estimated to have been allocated to the child if the parents and child were living in an intact household. A basic child support obligation is computed based on the combined income of the parents (replicating total income in an intact household). This basic obligation is then pro-rated in proportion to the income of each parent.

Williams, Robert G., *Development of Guidelines for Child Support Orders: Final Report,* U.S. Department of Health and Human Services, Office of Child Support Enforcement, II–68, 1987. Clearly, the income shares model relates only to child support. Because the income shares model bears no relation to the spousal support guidelines, it cannot "underpin" the spousal support formula. Therefore, the Superior Court acted unreasonably in refusing to follow the guidelines simply because they do not state that they apply to high-income cases.

Determining spousal support solely on the parties' net incomes and the obligor's other support obligations treats similarly situated persons similarly, which is the goal expressed in Section 4322 of the Divorce Code (Support Guidelines). Allowing for deviations from the presumptive amount of support by permitting the trier of fact to consider the factors set forth in Rule 1910.16–5 prevents the goal of uniformity from leading to an unnecessarily harsh result where findings of fact justify the amount of the deviation. Furthermore, by emphasizing the parties' income instead of

their standard of living, the guideline formula obviates the need for inquiry into details of the parties' frugality or extravagance with regard to clothing, entertainment, household expenses, etc. Thus, under the guideline formula, an obligee will not be prejudiced by the fact that during the marriage the obligor required him or her to live below the parties' means. Conversely, an obligor whose spouse spent profligately during the marriage will not be required to fund such a lifestyle unless it can be justified by the parties' income.

■ The child support guidelines set forth in Pa.R.C.P. 1910.6–3 clearly do not apply where the parties have a combined monthly net income in excess of $15,000 per month ($180,000 per year). However, there is no such limitation on the spousal support and APL formula set forth in Pa.R.C.P. 1910.6–4. While the *Melzer* formula must be applied in high income child support cases, courts should not apply it when calculating spousal support or APL because the guideline formula remains valid even in high income spousal support or APL matters. For these reasons, the trial court erred when it failed to calculate Wife's spousal support award based on Rule 1910.16–4, with an upward or downward modification pursuant to the factors set forth in Rule 1910.16–5.

### Child Support

■ As the preceding discussion indicates, the trial court should have calculated child support pursuant to *Melzer* and spousal support pursuant to the formula in Rule 1910.16–4. However, mistakenly believing that the reasonable needs of both the child and Wife were the basis of the support award, the trial court considered the expenses of the child and Wife together. Trial Court Opinion, December 10, 1999, pp. 8–13, 21–26. The first step in the *Melzer* analysis is calculating "the reasonable expenses of raising the children involved." *Melzer* at 995. In the instant matter, the trial court erred when it ignored the specific requirements of *Melzer* by failing to calculate the child's reasonable needs separately from those of Wife. Pinpointing the child's needs is crucial not only to determining his or her support, but for determining Wife's

support as well, because the spousal support calculation set forth in Rule 1910.16–4 allows the obligor to deduct child support obligations from his or her net income. Accordingly, upon remand the trial court must engage in a thorough *Melzer* analysis in order to comply with Rule 1910.16–2(e)(2) (High Income Child Support Cases).

### *Perquisites*

 "In *Commonwealth ex rel. Gitman v. Gitman*, 428 Pa. 387, 237 A.2d 181 (1967), this Court held that in determining a husband-father's financial obligation to his wife and children, a court must make a thorough appraisal of the husband-father's actual earnings and perquisites, and the true nature and extent of his property and financial resources." *Labar v. Labar*, 557 Pa. 54, 731 A.2d 1252 (1999). "Personal perquisites, such as entertainment and personal automobile expenses paid by a party's business must be included in income." *Heisey v. Heisey*, 430 Pa.Super. 16, 633 A.2d 211, 212 (1993). In the instant matter, the trial court identified perquisites provided by Husband's employer including automobiles, car phones, fuel expenses and automobile insurance. It declined to include the value of the perquisites when calculating Husband's income because both parties benefit from them. Significantly, the court's Order directing Husband to pay Wife $13,000 per month also requires that he pay through his company for Wife's car insurance, car phone, fuel and automobile repair bills. The court declined Wife's request for $18,336.00 per year for a new car because Husband's company provides her with a vehicle. At an on the record proceeding on June 10, 1998, the trial court made clear that if Husband's company were to cease providing benefits to the spouses of partners, this would be a proper basis for a petition to modify by Wife, and that under such circumstances it would consider adding back into Husband's income the value of Husband's individual perquisites. Reproduced Record at 195a–196a.[5] In light of the fact that the trial court clearly

---

5. Final resolution of the issue of providing an automobile for Wife can be achieved through the equitable distribution process. 23 Pa.C.S. §§ 3501–3508.

distinguished perquisites that benefit both parties from those that solely benefit the obligor, the trial court did not abuse its discretion in not requiring that the perquisites in the instant matter be included as income.

The trial court also determined that the value of medical insurance provided to Husband and his family by Husband's employer should not be included in his income. We recognize that in *Calabrese v. Calabrese,* 452 Pa.Super. 497, 682 A.2d 393, 396 (1996), *allocatur denied,* 547 Pa. 722, 689 A.2d 230 (1997), the Superior Court rejected the obligor-father's argument that medical benefits paid by his employer benefited the entire family, and therefore should not be included as income. The Superior Court noted that because the Domestic Relations Code provides that a court may order an obligor to pay health insurance premiums for his or her spouse or children, "this sum is properly included in the calculations of Husband's income." *Id.* at 397. We disagree. Section 4324 of the Domestic Relations Code provides that in addition to periodic support payments, the court shall order an obligor to provide health care coverage to a spouse where such coverage is available at no cost or at a reasonable cost as a benefit of employment. Section 4326(b) extends a similar obligation from a noncustodial parent to a child. Because the obligation to provide medical insurance to a spouse and child is in addition to the support obligation, it would be inequitable to include the value of the medical insurance benefit when calculating Husband's income available for support. Accordingly, to the extent that *Calabrese* holds otherwise, we specifically reject the reasoning of that decision of the Superior Court. Therefore, the trial court properly excluded the value of the medical insurance benefit that Husband receives from his employer.

## CONCLUSION

Spousal support in all cases, regardless of income level, is based on the formula in Rule 1910.16–4. Any deviation from this must be made pursuant to Rule 1910.16–5. Prior to determining spousal support, the finder of fact must first

calculate the payor's child support obligation. In cases where the combined net income exceeds $15,000 per month ($180,000 per year), the child support obligation must be determined based on the child's reasonable needs, as required by *Melzer*. While the reasonable needs of a child are paramount in a high-income child support matter, the reasonable needs of a spouse are not a proper consideration when calculating spousal support or APL.

Therefore, we reverse the Order of the Superior Court and remand this matter to the trial court for further proceedings consistent with this Opinion.

Former Chief Justice FLAHERTY did not participate in the decision of this case.