**Diane P. RICH, Appellee**

v.

**John W. RICH, Jr., Appellant.**

**Diane P. Rich, Appellant**

v.

**John W. Rich, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 28, 2008.
Filed Jan. 15, 2009.

---

**3.** I disagree with the Majority that Appellant adequately addresses his burden of making a strong *prima facie* showing that he is the victim of a miscarriage of justice (see op. at 395 n. 21). Rather, Appellant's single-sentence reference to a "miscarriage of justice" on page 15 of his principal brief is made in the context of his argument that none of the issues he currently raises has been waived. Appellant does not cite *Lawson* or in any manner refer to his enhanced burden as a serial PCRA petitioner. Similarly, Appellant's belated citation to *Lawson* in his reply brief is unaccompanied by any developed argument concerning his burden. I find these cursory allusions to a "miscarriage of justice" to be precisely the type of issue presented in a "boilerplate fashion" that the Majority attributes to deficient stewardship. See op. at 386 n. 7.

Richard L. Caplan, Lancaster, for Rich, J.

Arlen R. Day, II, Pottsville, for Rich, D.

BEFORE: ORIE MELVIN, BENDER and FITZGERALD *, JJ.

OPINION BY BENDER, J.:

¶ 1 John W. Rich, Jr., (Father) appeals from the January 3, 2008 order directing that he pay child support to Diane P. Rich (Mother) on behalf of the parties' four children. Mother cross-appeals from the same order. We affirm in part and vacate and remand in part.

¶ 2 The trial court provided the following background information that led to the present appeal:

The brief history of this case is that [Mother] and [Father] were married on January 28, 1989. On the day of the wedding, the parties executed a prenuptial agreement. Mrs. Rich filed a divorce action on October 15, 2001. The parties are the parents of four (4) children: [L.R.] (DOB June 17, 1989), who

has reached her majority, [O.R.] (DOB April 17, 1991), [J.R.] (DOB September 5, 1992) and [I.R.] (DOB April 24, 1995).

After an interim support order was issued, [Father] filed exceptions thereto, arguing that there should be no support order because [Mother] was still living in the marital home and [Father] was paying all of the expenses. On or about Memorial Day of 2004, [Mother] and [the] four children moved out of the marital home. [Mother] filed this instant support complaint on June 7, 2004. Hearings on this matter were held [before a Master] on May 26, 2006, October 3, 2006, and February 6, 2007,[9] wherein both parties were represented by counsel, both parties testified, and several exhibits were made part of the record.

[9]It is not clear from the record why the hearings were held two (2) years after the complaint for support was filed.

Trial Court Opinion, 1/3/08, at 2. In his report, dated May 31, 2007, the Master recommended that Father pay to Mother the sum of $9,337.12 per month in support of the four children. This amount was calculated with a reduction of 20% because of the equally shared custody arrangement. The Master's report was made an order of court on June 3, 2007, following which Mother filed numerous exceptions; Father filed none. Mother had stipulated that, as a result of the Master's support order that greatly lowered Father's support obligation from an earlier order,[1] the Domestic Relation's Office recorded a credit to Father in excess of $800,000.00.

¶ 3 In response to Mother's exceptions, the trial court issued an order and opinion on January 3, 2008. The order directed

* Former Justice specially assigned to the Superior Court.

1. The original support order entered following a proceeding before a support conference officer required Father to pay $32,490.00 per month for the support of the four children.

Father to pay $15,791.67 per month, effective June 7, 2004, for the support of the four children. The court also ordered that effective June 17, 2007, the same sum was to be paid by Father per month for the support of the three children who had not reached age 18. In an attempt to reconcile the overpayment that by January 3, 2007, had been reduced to $498,903.02, the court incorrectly required Father to remit the sum of $15,791.67 to the Pennsylvania Support Collection and Disbursement Unit (PA SCDU) that would then transmit only $11,791.67 to Mother each month. Recognizing the error, the court issued an amending order on March 20, 2008, lowering Father's actual payment to $11,791.67 even though the support amount remained at $15,791.67, thus, allowing the $4,000.00 difference to be credited against Father's accumulated overpayment.

¶ 4 The trial court's January 3, 2008 opinion also provided the following factual information upon which the support order was based:

In the case at bar, the Father is the CEO of Gilberton Coal Company, Reading Anthracite Company, and many other companies including cogeneration facilities. The Father's estimated annual income is between $9,000,000.00 and $10,000,000.00, and he owns assets worth more than $40,000,000.00. The Mother does not work outside of the home and is dependent on the child support to meet the needs of the children.

The Father's house, which was the marital home, and the contents therein are valued between $2,000,000.00 and $3,000,000.00. The house is located on 150 acres of land. In addition to the 10,000 square foot home with an Olympic-sized, indoor swimming pool, the property has a barn, a farm house, a three-story garage and a tree house on it. Additionally, the property has a stream and ponds for fishing, an area for riding all-terrain vehicles and snowmobiles, and an area for camping. In contrast, the Mother's home, which she purchased in May 2004 for $725,000.00, is located on six-tenths of an acre of land and has none of the amenities that the Father's house has. The Mother is in the process of finishing the basement, which will add at least another 1,000 square feet of living space to the home. The Father paid off the $800,000.00 mortgage on the Mother's house in 2005, so the Mother no longer has the expense of that mortgage.

When the parties were married, they would travel worldwide as a family, and would stay at the best hotels and dine in the best restaurants. Additionally, the family would spend summers in New Jersey at a beach house owned by the Father's family and would spend time in Florida in a property owned by the Father's family. The children are still able to enjoy these travel opportunities with the Father. On the other hand, the Mother cannot afford to take the children on the same types of vacations. For example, the Mother took the children to Rehobeth Beach, Delaware for two weeks last summer and to New York City and Chicago for a few days.

The Mother testified at the hearing that her total expenses in 2005 for herself and the children were approximately $205,000.00. Part of that expense was for her attorney's fees in the amount of $15,500.00 regarding another legal matter. Also, the Mother testified that her total expenses in 2004 for herself and the children were $201,000.00, which included $50,000.00 in attorney's fees on another matter. The Father did not present evidence to dispute these figures, but argued that the expenses were not exclusively for the children and that the Mother should have itemized the

expenses paid for her benefit. The Mother estimated that approximately 10% of the total expenses were paid on her behalf.

Trial Court Opinion, 1/3/08, at 6–8. Lastly, the trial court concluded:

> We accept the Mother's testimony regarding the 2005 annual expenses required to support the children as $189,500.00,[11] which is $15,791.67 per month. We are not adjusting the monthly support after [L.R.] attained 18 years of age because we believe the normal cost-of-living increases for the expenses of the remaining three children will offset that amount. Because the Mother is not employed outside of the home and has no income, we find that the *Melzer* [2] analysis places 100% of the support obligation on the Father. Therefore, the *Melzer* analysis requires that Father pay 100% of the children's needs, or $15,791.67 per month. Furthermore, as explained in *Melzer*, the adjustment for shared physical custody provided for in Part II of Pa.R.C.P. 1910.16–4 does not apply in a *Melzer* case. *See Bulgarelli*, supra. at 113. The Mother is required to maintain her house no matter where the children are sleeping on any given night.

---

[11] Mother testified that she spent $205,000.00 in 2005. However, we find that $15,500.00 of that total was for the Mother's attorney's fees in another matter and, therefore, we are subtracting that amount from the total.

*Id.* at 10.

¶ 5 Following the appeals filed by both Father and Mother, the court ordered each party to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). Both complied and we now list the issues each has raised.

Father raises the following three issues for our review:

A. Whether, in making a final child support award in a high income case, the trial court abused its discretion or committed an error of law when it attributed all of Mother's annual expenses, upon which it based its award to the support of the parties' children, despite Mother's intentional failure to identify those expenses required for her own support?

B. Whether the trial court abused its discretion or committed an error of law when it refused to reduce Father's monthly child support payment by 25 percent, despite one of the parties' children having attained the age of 18?

C. Whether, to rectify Father's past overpayment of child support, the trial court abused its discretion by applying a credit, against Father's new monthly support obligation, without first considering other, more expeditious overpayment recovery mechanisms and without benefit of an evidentiary record?

Father's brief at 5.

¶ 6 Mother raises the following issues:

A. Whether the trial court erred in ordering an amount of child support that is considerably less than Father's income of $10 million per year and assets totaling over $40 million can provide?

B. Whether the trial court erred in basing the child support on the amount of monies [M]other received in child support in 2005, instead of basing the amount of child support on considerations of the standard of

---

**2.** *Melzer v. Witsberger,* 505 Pa. 462, 480 A.2d    991 (1984).

living the Father can afford and/or the standard of living the children became accustomed to during the marriage?

C. Whether the trial court's finding that the [c]hildren require child support in the amount of $15,791.67 per month is such that it is error to require that the minor [c]hildren reimburse Father $4,000.00 per month from that amount to credit his overpayment resulting from the final order of child support, and whether requiring repayment to the Father is in the best interests of the minor [c]hildren?

D. Whether the trial court's award of child support is error where the Father has an income of $10 million per year and assets totaling over $40 million, and the child support awarded amounts to only 1.895% of Father's income, and, where, based on the child support guidelines, the award of child support is the mathematical equivalent to that of a [f]ather earning only eight percent (8%) of Father[']s annual income?

E. Whether the award of child support under which the [c]hildren receive $11,791.67 per month as support is error where the record shows that Mother received $10,000.00 per month during the marriage, which amount Father considered to be "spending money," and said "spending money" did not cover all bills associated with the home during the marriage[?]

F. Whether the trial court erred in not properly factoring in the substantial difference in the children's lifestyle with the Mother as compared to the

lifestyle they experienced during the marriage[?]

G. Whether the trial court erred in awarding an amount of child support that is inconsistent with the record[?]

Mother's brief at 1.

¶ 7 Before we begin addressing the parties' issues, we note our standard of review applicable to appeals from support orders:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Sirio v. Sirio*, 951 A.2d 1188, 1192–93 (Pa.Super.2008) (quoting *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa.Super.2007)).

¶ 8 Moreover, in light of the fact that this is a high income support case,[3] the *Melzer* analysis is applicable. Generally, *Melzer* requires that the trial court "must first calculate the reasonable expense of raising the children involved, based upon the particular circumstances—the needs, the custom, and the financial status—of

---

3. *See* Pa.R.C.P.1910.16–2(e)(2) entitled "High Income Child Support Cases." The section applies to cases where the parties' combined net income exceeds $20,000.00 per month and requires that support be calculated pursuant to the *Melzer* formula.

the parties." *Melzer*, 480 A.2d at 995. "Once the reasonable needs of the children have been determined, *Melzer* sets forth a formula to calculate each parent's support obligation." *Chapman–Rolle v. Rolle*, 893 A.2d 770, 775 (Pa.Super.2006) (quoting *Mascaro v. Mascaro*, 569 Pa. 255, 803 A.2d 1186, 1189 (2002)). "Specifically, the court must determine the amount of each parent's income which remains after the deduction of the parent's reasonable living expenses." *Id.* (citing *Melzer*, 480 A.2d at 996).

¶ 9 With regard to his first issue, Father acknowledges that the year 2005 was appropriate as the base year to calculate a proper child support award, since it was the first year Mother did not live in the marital home. Father also acknowledges that he is responsible for 100% of the children's support obligation, because Mother has no income with which to support the children. He also recognizes that the Master incorrectly reduced his support obligation by 20% due to the split custody arrangement. However, Father challenges the trial court's determination that all of Mother's 2005 expenses were attributable to the support of the children and that, although she was made aware that she needed to identify those expenses necessary for her own support, she failed to separate her expenses from those of the children. Specifically, Father identifies a $50,500.00 American Express credit card amount that Mother listed on her expense statement without any explanation as to how it should be apportioned. Father contends that the court merely subtracted the $15,500.00 fee Mother paid to her attorney from the $205,000.00 total amount that represented Mother's 2005 total expenses and divided the remaining $189,500.00 by 12, arriving at the $15,791.67 monthly support obligation. Father does, however, concede that he "accepted that all of Moth-er's net 2005 expenses (after removal of mortgage payments and attorneys fees), *other than her undifferentiated Amex expenditures*, were supportive of the children." Father's brief at 18. Essentially, Father suggests that after reducing the $189,500.00 amount for total expenses for 2005 by the $50,500.00 American Express charges, his monthly support obligation would approximately equal $11,700.00 per month, nearly the same amount as the Master's result after a correction of the 20% error for the shared custody, which Father recognizes does not apply to a case decided under *Melzer*. *See Bulgarelli*, 934 A.2d at 113.

¶ 10 To support his position, Father cites *Chapman–Rolle* for the proposition that "Pennsylvania law requires the party seeking child support 'to calculate the children's reasonable needs separate from [his or her own].'" Father's brief at 17 (quoting *Chapman–Rolle*, 893 A.2d at 775). Essentially, Father is only challenging the failure of Mother to present a detailed accounting of the children's reasonable needs solely with regard to the charges on the American Express credit card. He recognizes that this Court, as in *Brody v. Brody*, 758 A.2d 1274 (Pa.Super.2000), remands for recalculations when a party fails to properly calculate the children's expenses apart from the parent. However, rather than requesting a remand, he asks that we simply adopt the Master's report as corrected in regard to the split custody reduction. Moreover, he suggests using this method because he alleges that Mother intentionally refused to provide adequate information and should therefore be estopped from challenging the Master's determination.

¶ 11 It is evident that the trial court accepted as credible and reasonable Mother's detailed testimony provided in support of her assertion that only 10% of her total

expenses were paid on her own behalf. That determination, taken together with Father's acceptance of Mother's net 2005 expenses as supportive of the children, resulted in the trial court's conclusion that $189,500.00 represented the total amount Mother spent on the children. It also appears that the trial court was attempting to provide Mother with appropriate housing and lifestyle amenities during her period of custody, because she is the parent with fewer assets and no income. *See Saunders v. Saunders,* 908 A.2d 356, 359 (Pa.Super.2006) (in a guidelines case, the trial court has discretion to determine appropriateness of deviation under all the relevant circumstances, *i.e.,* sufficient assets to provide appropriate housing and amenities) (citing *Colonna v. Colonna,* 581 Pa. 1, 855 A.2d 648 (2004)). Therefore, keeping in mind that we may only reverse a support order if it cannot be sustained on any ground, we conclude that the trial court did not abuse its discretion in calculating the support award as it did. Thus, we determine that Father's first issue is without merit.

¶ 12 We now turn to Father's second issue, which involves the court's refusal to reduce the child support order by 25% when the oldest child turned 18 years old. *See Kotzbauer v. Kotzbauer,* 937 A.2d 487, 489 (Pa.Super.2007) (stating that "as a general rule, the duty to support a child ends when the child turns eighteen or graduates from high school"). However, Father has not cited any case law that requires a set percentage reduction as he suggests here, where he claims that support for four children should be reduced by 25% because one of the children has reached 18. In the context of an equally split custody arrangement, the court in *Bulgarelli* with reliance on *Colonna,* explained "that a parent incurs certain fixed costs that remain the same whether the

children are in that parent's custody or not." *Bulgarelli,* 934 A.2d at 114. The same can be said of a household where one child of four has reached the age of 18. Certain fixed costs for the remaining three do not change and do not necessarily support a 25% reduction in the support obligation. As we noted previously, the trial court stated, "[a] simple division of the needs of the family into equal parts does not satisfy a *Melzer* analysis." Trial Court Opinion, 1/3/2007, at 6 (quoting *Fitzgerald v. Kempf,* 805 A.2d 529, 533 (Pa.Super.2002)). Moreover, as we also previously noted, the court explained that, "We are not adjusting the monthly support after [L.R.] attained 18 years of age because we believe the normal cost-of-living increases for the expenses of the remaining three children will offset that amount." *Id.* at 10. However, because this reason for refusing to adjust the monthly support amount after the oldest child reached 18 was not based on evidence contained in the record, we must remand for either a recalculation or a clarification of the reasons for this refusal based on record evidence, or if necessary, upon the submission of additional evidence.

¶ 13 Father's third issue concerns the manner in which the trial court ordered the recoupment to Father of the outstanding overpayment that resulted from a prior, much higher support obligation. Father essentially challenges the court's amended order, dated March 20, 2008, that granted Father a $4,000.00 credit each month by requiring him to actually pay to PA SCDU $11,791.67, while the support obligation remained at $15,791.67. Father contends that no evidence in the record supports the mechanism which the court used to provide a way for Father to recoup his overpayment. Specifically, Father alleges that at the $4,000.00 per month rate of recoupment, it will take ten

years for the overpayment to reach zero. Consequently, he claims that when the youngest child reaches 18 years of age, in May of 2013, an approximate balance of $250,000.00 will still be due Father at that time. Therefore, Father requests that this Court order a remand for the development of a record, so that the parties can reach a reasonable solution. One idea suggested by Father involves a setoff against amounts that Father will be required to pay Mother pursuant to the parties' prenuptial agreement. Otherwise, he suggests that he may be obligated to sue for the return of the balance of his overpayment, if Mother does not voluntarily pay him the balance due.

¶ 14 In response to Father's argument, Mother relies on *Silverman v. Silverman*, 180 Pa.Super. 94, 117 A.2d 801, 803 (1955), wherein this Court held that "[i]t is within [the court's] discretion to give only such credit to the father for the contributions made in excess of the order as it deems proper." Mother also points out that Father failed to support his argument with any case law justifying his contention that he should receive a setoff against monies he owes Mother resulting from the litigation over the prenuptial agreement.

¶ 15 The trial court likewise relied for guidance on *Silverman*, although it recognized that in *Silverman* the overpayment issue arose due to intended gifts by the father to the children, rather than overpayment as a result of court orders. The court in the instant case concluded that "we believe our [o]rder was tailored to strike a fair balance between [Father's] right to apply his credit and [Mother's] right to receive child support on behalf of her children. The order gives [Father] the benefit of his overpayments and insulates the support recipients from undue hardship, and was in conformance with the philosophy of *Silverman v. Silverman*."

Trial Court Opinion, 3/7/08, at 3 (footnote omitted).

¶ 16 Our research has located *Portugal v. Portugal*, 798 A.2d 246 (Pa.Super.2002), a case in which a father was paying both spousal and child support pursuant to a temporary order. At the hearing, the mother agreed to the dismissal of her spousal support request, acknowledging that she was living with another man. To rectify the overpayment of spousal support, the trial court ordered the mother to reimburse the father by giving the father a $200.00 credit on his monthly child support payment until the full amount was repaid. On appeal, the father argued that the court abused its discretion by not ordering the repayment in a single lump sum, *i.e.*, to allow repayment over a two-year period is providing the mother with an interest-free loan. In resolving this issue, our Court stated:

[W]e observe that the trial court's allocation of a credit to correct Husband's overpayment of his support obligation may be likened to a trial court's efforts to allocate a party's underpayment or non-payment of a support obligation. Traditionally, courts of this Commonwealth have been given broad discretionary power to remit accrued support arrearages. *Kessler v. Helmick*, 449 Pa.Super. 113, 672 A.2d 1380, 1384 (1996). Moreover, in *Kessler*, we determined that the trial court did not abuse its discretion when it ordered a party to pay his support arrearages in installments, rather than a lump sum. *Id.* at 1385. In light of the discretion afforded to trial courts to remedy a party's underpayments, we do not find that the trial court abused its discretion when it remedied Husband's overpayment with a monthly credit.

*Id.* at 255.

¶ 17 It is evident that the trial court's method here to rectify Father's overpay-

ment has some precedent. Apparently, because few cases address the issue of overpayment, the trial court relied on *Scott v. Scott*, 24 Pa. D. & C.4th 393 (Com.Pl. Montg.Cty.1995), a common pleas court case that held the father's overpayments were intended to be future support, not gifts, and therefore, he was entitled "to apply his past overpayments to his future obligation." *Id.* at 400. Other cases cited by the *Scott* court all center on the dichotomy between whether the overpayment was intended to provide future support or whether it was intended to be a gift. *See Bradley v. Bradley*, 387 Pa.Super. 503, 564 A.2d 504 (1989); *Miller v. Miller*, 353 Pa.Super. 194, 509 A.2d 402 (1986); *Shovlin v. Shovlin*, 318 Pa.Super. 516, 465 A.2d 673 (1983).

¶ 18 Here, the fact that an overpayment became an issue is due to prior orders of court. It was neither intended as future support nor as a gift. It appears that the trial court recognized that the accumulation of the overpayment was not gratuitous and, therefore, ordered the $4,000.00 per month credit. However, at the present rate of support due each month, an amount may remain unrecouped by Father when the youngest child reaches 18. The trial court opinion makes clear that it intended that an unrecouped amount would remain, in part based on a conclusion that the amount of support Mother received each month could not be lowered more than by $4,000.00. Due to the circumstances that exist here and the trial court's recognition that an amount of Father's overpayment would not be recouped by him, we conclude that it was not an abuse of discretion to attempt to create a balance between the competing interests, the most important of which is the best interests of the children.

¶ 19 We now turn to the issues raised by Mother. In her first two issues, Mother argues that the trial court abused its discretion by ordering an award of child support that is manifestly unreasonable in light of Father's income and his assets. Further, she contends that the award was solely based "on that amount of money that was available to the Mother in 2005 from child support, and on alleged considerations regarding the differences in the amenities offered by the [p]arties' homes." Mother's brief at 29. Mother relies on a number of cases that she claims illustrate the trial court's error in failing to issue a support order that is commensurate with the parents' station in life and in line with what Father can readily afford. *See, e.g., Mascaro, supra* and *Karp v. Karp*, 455 Pa.Super. 21, 686 A.2d 1325 (1996). Essentially, she alleges that in these and other cases, the fathers have extremely large yearly incomes, but nowhere near as much as what Father earns here, and that those fathers were obligated to pay much higher support payments for fewer children. Mother believes that the amount of the present support order is not "sufficient to provide an environment even remotely similar to the environment the [c]hildren enjoy at the Father's home." Mother's brief at 30.

¶ 20 The *Melzer* case held:

that in each case the hearing court must first calculate the reasonable expense of raising the children involved, based upon the particular circumstances—the needs, the custom, and the financial status—of the parties. *See Bethea v. Bethea*, 43 N.C.App. 372, 258 S.E.2d 796, 799 (1979) ("What constitutes necessities depends upon the facts and circumstances of the particular case. They include food, clothing, lodging, medical care and proper education. They are not limited to those things which are absolutely necessary to sustain life, but extend to articles that are reasonably necessary for the proper and suitable maintenance of

the child in view of his social station in life, the customs of the social circle in which he lives or is likely to live and the fortune possessed by him and his parents.").

*Melzer,* 480 A.2d at 995–96.

¶ 21 The *Melzer* court also explained that "a court has no way of arriving at a reasonable order of support unless it knows how much money is actually required to care for the children involved." *Id.* at 995. This statement is the basis for the requirement that Mother submit an accurate and detailed accounting of what she spent to care for the children's reasonable needs. Every expense that Mother submitted into evidence, other than the monthly mortgage payment (eliminated because Father paid off Mother's mortgage loan) and the payment to her attorney for other litigation, was calculated by the trial court to be used to support the children. Also, the court did not deduct from Mother's total expenses any amount that Mother may have used for her own reasonable needs, despite her testimony that 10% of the amount was attributed to her personal expenses.

¶ 22 Additionally, we are aware when discussing whether one parent has sufficient assets to provide appropriate housing and amenities for the children when they are in that parent's custody, the court in *Colonna* explained that the term "appropriate" does not mean an equal environment, nor does it mean merely adequate. "The determination of appropriateness is left to the discretion of the trial court, upon consideration of all relevant circumstances." *Colonna,* 855 A.2d at 652. This case law does not require that all the recreational benefits that the children enjoy when they are with Father must also be provided through support from Father when they are in Mother's custody. In fact, Mother admitted that the children have continued to attend private schools and summer camps as they did before she established a separate residence. Our review of the record in relation to Mother's first two issues reveals that the court's conclusions are not in error and no abuse of discretion was committed.

¶ 23 Mother's third argument involves the $4,000.00 credit issue also raised by Father in his third question presented to this Court. Our previous discussion, resulting in a remand to the trial court, resolves this argument and we will not revisit it.

¶ 24 The fourth issue that Mother raises rests on various mathematical comparisons she makes that show that Father's support obligation is only 1.895% of Father's income. Mother contrasts this with the highest support guidelines amount applicable to four children when a mother's and a father's combined net income equals $20,000.00 per month. *See* Pa. R.C.P. 1910.16–3.[4] Based upon these comparisons, Mother contends that mathematically Father is paying support as if he had an income of $840,000.00 rather than the $9,000,000.00 to $10,000,000.00 that he actually earns. Mother's argument mischaracterizes the presumptive minimum and its relationship to the *Melzer* formula. In *Bulgarelli,* this Court discussed the purpose of calculating the presumptive minimum amount of child support in the context of a *Melzer* case. We stated:

that the presumptive minimum is merely an indication that the support order should not fall lower than this amount, except under extraordinary circumstances. Although the presumptive minimum may be a starting point, it is the *Melzer* analysis that is to be used to

---

4. The guidelines provide that the presumptive minimum is $3,365.00 for four children.

calculate the child support due in a high income case.

*Bulgarelli*, 934 A.2d at 113. Here, the court applied *Melzer*. It did not abuse its discretion by failing to utilize the calculations upon which Mother relies. Moreover, Mother has not supported her method of calculating child support by reference to any case law or statute. Therefore, we conclude that this issue is without merit.

¶ 25 In her next issue, Mother contends that during the parties' marriage she received $10,000.00 per month from Father, an amount that he considered to be "spending money." Mother refers to this spending money and her extensive description of the "extravagant lifestyle the Rich Family lived during the marriage ...," Mother's brief at 36, which she believes supports her allegation that Father can afford more than the reduced per month support payment, *i.e.*, $11,791.67. Again, we refer Mother to the statements we made above in response to her first two issues. We relied on the *Melzer* case, which directs that the monthly child support payment is based primarily on the reasonable needs of the children. This needs analysis is based on the amount of money that is actually required to care for the children and is gleaned from the evidence Mother presented to the Master and that was accepted as reasonable by the trial court. Again, we conclude that the court did not abuse its discretion in fashioning the support award in this case. The award was based on the evidence presented.

¶ 26 Mother's last two issues again center on what Mother describes as the substantial differences in the lifestyles and standard of living that the children lead when in her care as opposed to the one that exists for them when they are with Father. She appears to be arguing that Father should be providing sufficient funds for the children's support that would allow her to replicate all the recreational amenities that exist at Father's home, that would provide all the travel opportunities, and that would duplicate the vacation homes owned by Father's family. Essentially, Mother argues that the court's support award requires the children to "live vastly different lives depending upon which parent has custody on any given day...." Mother's brief at 42.

¶ 27 The court specifically recognized that "[a]t Mother's home, the children do not have the same or similar amenities that they have become accustomed to having at the Father's home." Trial Court Opinion, 1/3/08, at 9. However, the court concluded that pursuant to *Saunders* the support should provide "appropriate" housing and amenities. It does not necessarily mean equal. Moreover, the court recognized that it was within its discretion to determine the amount that it believed was appropriate "upon consideration of all relevant circumstances." *Id.* Mother has not convinced us otherwise. Thus, we conclude that Mother's last two issues are without merit.

¶ 28 Accordingly, we affirm that portion of the trial court's order effective June 7, 2004, for the support of the four children. That portion of the trial court's order effective June 17, 2007, for the support of three children is vacated and the matter remanded for consideration of the evidence of record or any additional evidence submitted to calculate what change, if any, should be made in light of the oldest child's reaching the age of 18. All other portions of the January 17, 2007 order are affirmed.

¶ 29 Order affirmed in part and vacated in part. Case remanded for proceedings

consistent with this opinion. Jurisdiction relinquished.